## SUPREME COURT.

SYRACUSE CITY BANK agt. CORYDON COVILLE and others.

THE ONONDAGA BANK agt. THE SAME.

In an action upon a *money bond,* payable in *instalments,* where there is only *one instalment* due, and the plaintiff, before judgment, issues and seizes by *attachment* the personal property of the defendant, his *lien* by the attachment as against other creditors acquiring an intermediate title or lien upon the property, is only to the extent of the amount *actually due upon the bond at the time of the service of the attachment,* although at the time of entering judgment another instalment has become due.

That is, the attachment is not a lien for future instalments, to the detriment of other creditors who have liens intervening.

And this is so, assuming that the practice remains the same as before the Code (of which there is considerable doubt), of giving judgment on penal bonds.

*Syracuse Special Term, April,* 1860.

THE Syracuse City Bank asks that the sheriff of the county of Onondaga be directed to pay to it certain moneys in his hands, the avails of certain property of the defendants in the above actions sold by him, and which moneys are claimed by the Onondaga Bank.

The facts are briefly these: The action of the Syracuse City Bank was commenced May 18, 1858, on a bond in the penalty of $13,000, conditioned for the payment of $6,500, in instalments of $722.22 each, one of which became due May 1, 1858, and another became due on the 15th of September, and before the recovery of the judgment in the action, and after the sale of the property by the sheriff. On the 6th of July, 1858, an attachment was issued in the action, and on the 9th of the same month was levied upon the property of the defendants by the sheriff of Onondaga county, and on the 15th of December, 1858, judgment was recovered in the action for the penalty of the bond, $1,300 of debt, and $137.06 damages and costs, with direction that execution issue for the last amount, together with

$1,806.58, being the amount of the two instalments which had become due in May and September. On the 16th of December, 1858, an execution upon said judgment was issued to the sheriff of Onondaga, with directions to collect $1,943.64 and interest, and on the 3d of January, 1859, another execution, issued to the same sheriff, commanding him to levy $722.22 and interest, for another instalment that had become due on the bond on the 1st day of January.

On the 16th day of July, 1858, the Onondaga Bank recovered judgment against the same defendants for $2,363.41, and on the same day issued an execution thereon to the same sheriff, who levied upon the same property which he had before attached at the suit of the Syracuse City Bank. The property was sold by the sheriff on the 24th of August, 1858, and the proceeds of the sale were $2,932.71.

The property, after the levy and seizure by the sheriff, was claimed by one Price, as the assignee of the judgment debtors, and he brought an action of replevin against the sheriff on the 24th July, 1858; but the sheriff gave the requisite bond, the Syracuse City Bank furnishing the security, and retained the possession of the property. The suit was defended by the sheriff, under the attachment of the Syracuse City Bank and the execution of the Onondaga Bank, and the sheriff prevailed in the action, the assignment to Price being adjudged fraudulent as against creditors.

HOUGH & EDWARDS, and W. J. HOUGH, *for the Syracuse City Bank.*

JOHN C. HUNT and D. PRATT, *for the Onondaga Bank.*

W. F. ALLEN, Justice. The question before me does not necessarily involve the regularity of the practice adopted by the Syracuse City Bank in taking judgment, in form, for the penalty, with authority to issue execution for the amount of the instalments actually due by the condition

of the bond. The bond being conditioned for the payment absolutely of a sum certain, in instalments, at specified times; it was not, before the Code, a case for the assignment of breaches and assessment of damages, under the statute regulating proceedings on bonds for the performance of covenants. (2 R. S., 378.) The plaintiff counted in debt upon the bond, claiming the penalty as the debt due, and as the court could see whether the time for the payment of any or all of the instalments had elapsed, it was not necessary to aver the fact by way of assignment of breaches. Upon payment or satisfaction of the amounts due at the time of the recovery, the judgment remained as security for future instalments, and upon the non-payment of the sums as they became due, the plaintiff was at liberty to issue execution for instalments as they became due, upon peril of being set right upon motion, if he issued it improperly, or for too large an amount. (*Wood* agt. *Wood*, 3 *W. R.*, 454; *Nelson* agt. *Bostwick*, 5 *Hill*, 37; *Spaulding* agt. *Millard*, 17 *W. R.*, 331; *Taft* agt. *Brewster*, 9 *J. R.*, 334; *Mayor of Albany* agt. *Evertson*, 1 *Cow.*, 36.)

The statute (2 R. S., 378) made it necessary in actions upon bonds for the breach of any condition, other than for the payment of money, to assign breaches in the declaration, and provided for the trial of the issues that should be joined therein, and for the assessment of the damages occasioned by such breaches, and upon a verdict for the plaintiff, or upon a default of the defendant, authorized judgment for the penalty of the bond in favor of the plaintiff, and that he have execution for the damages assessed, with costs. It also provided, by section 11, that if the amount of the damages and costs should be collected or paid, the real and personal estate and body of the defendant should be exonerated and discharged from any further liability for the damages so assessed; but the judgment rendered in such action should remain as a security for any damages that might be sustained thereafter by the further breach of

any condition of such bond. A *scire facias* was given to the plaintiff upon the judgment, suggesting such further breaches against the defendant and all parties bound thereby, to which the defendant might plead, and upon which proceedings might be taken to assess the damages for such further breach. (*Id.*, §§ 12, 13.) It necessarily followed, from the form of the proceeding and judgment, that the costs were regulated by the recovery, which was for the penalty. (*Fairlee* agt. *Lawson*, 5 *Cow.*, 424; *Pearson* agt. *Bailey*, 10 *J. R.*, 229; *Godfrey* agt. *Van Cott*, 13 *id.*, 345; *Harris* agt. *Hardy*, 3 *Hill*, 393; *Harvey* agt. *Bardwell*, 6 *Cow.*, 57.) It is not necessary to consider whether this practice, which grew out of the technicalities of the common law, and the form of the contract, has survived the form of actions and of pleadings abolished by the Code, and remains almost alone an exception to the "uniform course of procedure" established by that act. It is certainly not in harmony with all the provisions of the Code, and yet perhaps not entirely repugnant to it, so that the two may not stand together. But considering that the statute regulating proceedings on bonds for the performance of covenants is not repealed by the Code, actions upon money bonds like this are not, as we have seen, within that act, and therefore the former practice upon such bonds is not protected by any statute, and if it continues it is in force by reason of its peculiar and inherent fitness and adaptedness to the remedy to which parties are entitled upon such a contract. The Code, abolishing all forms of actions, requires the plaintiff to insert in his summons in an action arising upon contract for the recovery of money only, a notice that he will take judgment for a sum specified therein. (*Code*, § 129.) Should the plaintiff in an action on a penal bond, conditioned for the payment of money, claim judgment for the penalty, or only for the amount actually due, which is really the cause of action and the extent of his demand? In his complaint he must state plainly and concisely the facts constituting

the cause of action, and a demand of the relief to which he is entitled. (*Code*, § 141.) The execution must refer to the judgment, and state in the body of it the amount actually due thereon. (*Code*, § 289). And writs of *scire facias* are abolished, and the remedies heretofore obtainable by it may now be obtained by civil actions under the provisions of the Code. (*Code*, § 428.) It would certainly be consistent with the theory and provisions of the Code to hold the party to the same form of proceedings and judgment in all cases in actions on bonds, conditioned for the payment of money, or the performance of covenants that is prescribed in justices courts upon bonds for the payment of money (*Code*, § 53), or in this court, where the amount claimed to be due is reduced by set-off or counter claim (*Alendorf* agt. *Stickle*, 2 *Cow.*, 412 ; *Fairlie* agt. *Lawson*, *supra*), in analogy to the statute allowing set-off of demands founded upon a bond having a penalty for the sum equitably due by the condition (2 *R. S.*, 354, § 18), and allow successive actions to be brought as causes of action arise from time to time for breaches of the condition.

The English common law procedure act of 1852, in terms, excepted the act regulating the assignment of breaches, and authorizing a judgment for a penalty as a security for damages in respect of further breaches from the effect of the " procedure act." (*Act*, § 96.) But it is not necessary to decide this question. Assuming without expressing an opinion, that the practice remains the same as before the Code, and that judgment in the same form should be given on bonds having a penalty ; but little advance is made in establishing the claim of the Syracuse City Bank to the moneys in the sheriff's hands, beyond the amount actually due at the time of the service of the attachment. The lien of that bank is that given by the attachment, the judgment merely declaring and settling the rights of the parties, and confirming and establishing the lien of the attachment. In this sense, and to this extent, the lien of

the judgment, or rather the lien of the execution issued
upon the judgment, for the judgment itself is not a lien
upon chattels, relates to and dates from the time the pro-
perty was attached. (*Am. Ex. Bank* agt. *Morris Canal and
Banking Co.*, 6 *Hill*, 362.) It is said that the lien of the
attachment is limited to the amount for which the court
commanded the officer to attach; but it is commensurate
with the amount of the judgment and costs, though that
be greater than the amount which the precept of the writ
required the officer to secure, and to this is cited *Drake on
Attachments* (§ 223). This may be true, yet I apprehend
that as against junior attachments or executions, the lien
of the attachment must be restricted to the cause of action
for which the writ issued, and cannot be so extended as
to embrace new and distinct causes of action, and include
claims for which the plaintiff could not have proceeded
before the lien of the subsequent process attached. I know
no such system of tacking in judicial proceedings. The
cause of action is the breach of the condition, and a new
cause arises upon every neglect to pay an instalment as it
becomes due. The claim, on demand of the plaintiff in
law and equity, is limited to the amount actually due,
without regard to the form of the action or of the judg-
ment. Whenever breaches are required to be assigned in
a declaration, or suggested upon the record (and the pro-
ceedings upon money bonds are analagous to such actions);
if breaches take place after action brought, and before
judgment, the plaintiff cannot assign or suggest them, he
must bring a *scire facias* (2 *Ch. Arch.*, 943). So having
taken measures to recover one instalment by an attach-
ment, if another become due before he is in a situation to
issue an execution upon a judgment for the penalty, the
plaintiff must obtain a second attachment. The rights of
creditors by judgment and execution junior to the first
attachment are not liable to be thrust out by the tacking of
a new cause of action, and a new claim to the pre-existing

cause and claim. If that should be so, then in case the first instalment is paid after the second becomes due, where then is the lien for the benefit of the last instalment? Or suppose, on the trial of the issue as to the first instalment, it should be wiped out by a set-off, where then would be the action and the lien for the default in paying the second instalment. So far as the lien is concerned, there is and can be no connection between the two instalments. If the action were a bailable action, or if for any reason the defendants were liable to be held to bail, they could only have been held to bail for the principal and interest due on it, and not for the penalty. So on bonds for the performance of covenants, bail can only be required to the amount of the real damages sustained, and not to the amount of the penalty. (*Ch. Arch.*, 685; *Talbert* agt. *Hodson*, 7 *Taunt.*, 251; 1 *Sid.*, 63; *Anderson* agt. *Bill*, 2 *C. & J.*, 630; *Gr. Pr.*, 138.) Bail being required only for the amount actually due at the time of the commencement of the action, it would hardly be claimed that the liability of the special bail would increase, as instalments became due from time to time, or breaches of the condition of the bond occurred up to the time judgment should be recovered. The goods seized upon the attachment are in the place of bail or security for the debt, and as creditors, by seizure, acquire an interest in or a lien upon the goods, they have all the rights and equities of special bail, and the lien of the attaching creditor cannot be increased to their detriment by tacking a claim accruing after the creditors have acquired their rights. The object of an attachment is to secure a debt actually due, and has no reference to a judgment which may, according to the practice of the court, be recovered as a security for a debt thereafter to become due. To warrant an attachment it must appear that a cause of action exists, and this cause is only for a sum actually due. (*Code*, § 229.) The statute prescribes the form of the attachment, and in it must be stated the amount of the plaintiff's demand, and

the sheriff is commanded to attach and safely keep all the property of the defendant, or so much thereof as may be sufficient to satisfy the demand. (*Id.*, § 231.) If a sheriff neglect to levy on sufficient property to satisfy the debt, he is liable to an action at the suit of the plaintiff. (*Ransom* agt. *Halcott*, 9 *How.*, 119.) But a sheriff would not be liable to an action for not levying on property to satisfy instalments that should thereafter become due, or the entire penalty of the bond, and would be liable to an action for an unreasonable levy, if he should do so; and the plaintiff can claim no more, under his attachment, than he could have compelled the sheriff to take and hold. At any time after appearing in the action, the defendant may apply for an order to discharge his attachment, and if the order be granted, the property attached will be returned to him. Upon such application the defendant must deliver to the officer an undertaking, with sureties, to pay the plaintiff the amount of judgment that may be recovered against the defendant in the action, not exceeding the sum specified in the undertaking, which shall be at least double the amount claimed by the plaintiff in his complaint. (*Code*, §§ 240, 241.) The amount of the plaintiffs debt due at the time, and claimed by him, determines the amount for which security must be given on the discharge of the attachment. This is in analogy to the rule as to bail to the action on a money bond with a penalty. The bail in each case has reference to the amount actually due, the cause of action as it exists at the time, and not to any prospective liability. It is true the Code directs that the judgment shall be satisfied out of the attached property. (*Code*, § 237.) But this section is to have a reasonable construction. The judgment is not a lien upon chattels, and the execution upon it cannot supercede a prior levy by virtue of other process, and the attachment cannot operate prospectively, or become by a sort of sliding process, security for debts as they accrue. As against the judgment debtor, the property may be

applied to satisfy the whole judgment, and this not in virtue of the attachment, but under the execution or the judgment of the court. Intervening rights and equities are not expressly reserved, because it was not necessary. The sheriff, for any neglect of duty under the attachment, would only be liable to the amount of the claim for which the attachment issued and the costs. Had a wrong doer taken the property from the possession of the sheriff by the assent of the debtor and general owner of the property, his liability would have been limited by the extent of the sheriff's lien under the attachment. It is simply the case of one creditor obtaining a lien for a single debt, leaving an interest in the debtor subject to levy and sale, and the seizure of such interest by a second creditor, and this lien must prevail against a demand of the first creditor thereafter maturing. The sale of the property in this case was in truth in virtue of the execution of the Onondaga Bank, as the sheriff had no authority to sell under the attachment, and the sale was before the second instalment became due, and before any lien could attach in respect to it. Whatever virtue and force there may be in a judgment for the penalty of a bond to secure upon the real property of the debtor, the payment of instalments thereafter to become due, there is none in an attachment issued under the statute, to become effectual as a security upon the chattels of the debtor for future breaches of the conditions of the bond, or the payment of instalments thereafter to become due as against creditors or others acquiring an intermediate title to or lien upon the goods. The Syracuse City Bank is only entitled to the instalments due at the time the attachment was issued, with interest and cost, and the Onondaga Bank is entitled to the residue.

The sheriff will be directed to apply the money accordingly. Neither party to have costs of this motion.

Affirmed on appeal to the general term of the fifth judicial district. July 6, 1860.