UNION TRUST COMPANY *v.* JOSEPH HEGGELUND ET AL.
(14235)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and BORDEN, Js.

Argued May 28—decision released July 23, 1991

*Leonard M. Horvath,* for the appellant (defendant Linwood R. Clark, Jr.).

*Willa B. Perlmutter,* with whom were *Irving H. Perlmutter* and, on the brief, *Gary P. Sklaver,* for the appellee (plaintiff).

*Michael D. O'Connell* filed a brief for the Connecticut Attorneys Title Insurance Company as amicus curiae.

PETERS, C. J. The dispositive issue in this case is whether, under General Statutes § 52-380a (b),[1] the

---

[1] General Statutes § 52-380a provides in relevant part: "JUDGMENT LIEN ON REAL PROPERTY. . . .

"(b) From the time of the recording of the judgment lien certificate, the money judgment shall be a lien on the judgment debtor's interest in the

entire amount of a judgment lien relates back to the date of a prior attachment, or whether the relation back is limited to the amount of the attachment. After a decree of foreclosure by sale to enforce a judgment lien held by the plaintiff, Union Trust Company (Union Trust), against the named defendant, Joseph Heggelund, Union Trust filed a motion for supplemental judgment asserting its rights to the entire balance of the funds generated by the sale. The defendant Linwood R. Clark, Jr. (Clark), another encumbrancer of the named defendant, filed an objection to this motion. The trial court, *Kaplan, J.*, rendered a supplemental judgment in favor of Union Trust, from which Clark appealed to the Appellate Court. We transferred the appeal here pursuant to the provisions of Practice Book § 4023, and now reverse.

The undisputed facts are as follows. On April 24, 1987, Union Trust recorded a prejudgment attachment on property owned by the named defendant, Joseph Heggelund, in the amount of $23,000. On November 3, 1988, Union Trust filed a judgment lien, referring to the attachment, for $29,171.80 plus postjudgment interest. In the interim, Clark had placed an additional encumbrance on the property in the form of an attachment for $30,000. A foreclosure auction was held, at which Union Trust purchased the property for $40,000. The sale resulted in net proceeds, after the payment of expenses, in the amount of $33,225.56. Since the further accrual of interest charges had increased the Union

real property described. If, within four months of judgment, the lien is placed on real property which was previously attached in the action, the lien on that property shall hold from the date of attachment, provided the judgment lien certificate contains a clause referring to and indentifying the attachment, substantially in the following form: 'This lien is filed within four months after judgment in the action was rendered and relates back to an attachment of real property recorded on (month) (day) (year), at Volume          Page          of the          land records.' "

Trust claim to more than $35,000, it sought a judicial order for payment to it of all the net proceeds of the foreclosure sale. Clark filed a timely objection.

In its supplemental judgment directing disbursal of the sale proceeds, the trial court determined that Union Trust was entitled to priority over Clark for the entirety of its judgment lien and not merely, as Clark had contended, for the $23,000 of the original Union Trust attachment. The court concluded that the current statute governing prejudgment remedies had impliedly overruled the rationale behind earlier case law limiting the priority of the lien of an attaching creditor to the amount stated in the attachment. It also found that Clark had no special rights as an intervening creditor, because he had not relied on Heggelund's equity in the real estate when he extended Heggelund credit and had not risked his own money in the foreclosure sale at which Union Trust bought the secured property.

Clark's appeal challenges the trial court's conclusion of law about the extent of the Union Trust priority as well as the court's findings concerning Clark's status as a competing creditor. We will consider the legal issues and the factual issues separately.

Clark contends that the trial court improperly concluded that the full value of Union Trust's judgment lien had priority over encumbrances filed after the attachment, even though the judgment lien exceeded the amount of the attachment. Clark rests his argument on *Hubbell* v. *Kingman,* 52 Conn. 17 (1884), in which this court construed a statute substantially identical to the present statute.[2] We held in *Hubbell* that an attach-

---

[2] Acts of 1878, c. 58, codified at General Statutes (1888 Rev.) § 3032, provided in pertinent part: "Such judgment, from the time of filing such certificate, shall constitute a lien upon the real estate described in such certificate; and if such lien be placed upon real estate attached in the suit upon which such judgment was predicated, and within four months after such judgment was rendered, it shall hold from the date of such attachment."

ment of real estate creates a lien only for the amount that it directs the officer to attach, although the later judgment for which the attachment furnishes security may be for a larger amount.

Union Trust, like the trial court, counters that *Hubbell* should be overruled, either because its rationale has been undermined by subsequently enacted statutes or because it was wrongly decided.[3] Union Trust urges us to conclude that *Hubbell* is outdated because it relied in part on the fact that a plaintiff's attorney, as an officer of the court, was then empowered to determine the amount of the attachment without prior court approval. "The lien results from the act of the officer and not from any action by the court. The court can neither originate it nor enlarge it." *Hubbell* v. *Kingman,* supra, 20. By contrast, since the enactment of General Statutes § 52-278a et seq. in 1973, it is the trial court that determines, after a hearing, whether a writ of attachment should issue and, if so, in what amount.

There is, however, no evidence that the legislature intended to change the longstanding rule concerning

[3] The recent decision of the United States Supreme Court in *Connecticut* v. *Doehr,* 500 U.S. , 111 S. Ct. 2105, 115 L. Ed. 2d 1 (1991), in which an ex parte attachment pursuant to the Connecticut statute in a tort action was held to violate due process, has no direct bearing on this controversy. The record does not indicate whether the attachments involved here were ex parte. If they were not, *Doehr* would not apply. Even if the attachments were ex parte, this is not a tort suit, but a suit on a debt, and "disputes between debtors and creditors more readily lend themselves to accurate ex parte assessments of the merits." Id., 2115. Here, as in *Mitchell* v. *W. T. Grant Co.,* 416 U.S. 600, 94 S. Ct. 1895, 40 L. Ed. 2d 406 (1974), "the risk of error was minimal because the likelihood of recovery involved uncomplicated matters that lent themselves to documentary proof . . . ." *Connecticut* v. *Doehr,* supra. Moreover, even if the attachment somehow infringed upon the named defendant's due process rights, the parties to this appeal do not have standing to vindicate this claim. One of them secured the attachment in question and the other had timely notice of its existence at least to the extent of the amount originally attached. Indeed, no due process claims were asserted in the trial court in this case, and none has been asserted here.

priority of claims when it amended the statute governing attachments. We have noted that the 1973 act was passed in order to comply with then recent United States Supreme Court cases prescribing standards of due process in certain creditor proceedings affecting property rights. *Ledgebrook Condominium Assn., Inc.* v. *Lusk Corporation,* 172 Conn. 577, 581–82, 376 A.2d 60 (1977); see 16 H.R. Proc., Pt. 12, 1973 Sess., pp. 5837, 5839, 5841.

Our prejudgment remedy statutes read in their entirety support the proposition that the priority of an attachment depends on the amount stated in the attachment itself. In undertaking the probable cause analysis that our present statute requires, a court is required to consider not only the validity of the plaintiff's claim but also the amount that is being sought. See *Solomon* v. *Aberman,* 196 Conn. 359, 379, 493 A.2d 193 (1985); *Essex Group, Inc.* v. *Ducci Electric Co.,* 181 Conn. 524, 525–26, 436 A.2d 16 (1980); *Ledgebrook Condominium Assn., Inc.* v. *Lusk Corporation,* supra, 585. Such an analysis would be pointless if the attachment were to be "a growing quantity, increasing with the accumulation of costs and enlarging as more damages are demanded." *Hubbell* v. *Kingman,* supra, 20. Similarly, if the amount of the attachment has no juridical significance, there would be no purpose in the statutory proceedings permitting judicial modification of that amount. General Statutes § 52-278k. Unless the attachment is limited to the sum stated, a plaintiff could establish priority over all subsequent encumbrancers by showing at the time of the attachment probable cause for the validity of a claim of one dollar. " ' "[S]tatutes should be construed so that no part of a legislative enactment is to be treated as insignificant and unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase in a legislative enact-

ment." ' " *84 Century Limited Partnership* v. *Board of Tax Review,* 207 Conn. 250, 263, 541 A.2d 478 (1988), quoting *State ex rel. Kennedy* v. *Frauwirth,* 167 Conn. 165, 168, 355 A.2d 39 (1974). Courts must presume that the General Assembly did not intend to enact useless legislation. *Bergner* v. *State,* 144 Conn. 282, 287, 130 A.2d 293 (1957).

Moreover, the fact that a writ of attachment did not originate with the court was only one of several independent rationales for the result in *Hubbell.* The court in *Hubbell* also reasoned that the power to attach property on mesne process "is conferred by statute, and being in derogation of the common law it should receive a strict rather than a liberal construction." *Hubbell* v. *Kingman,* supra, 19. We continue to follow this rule of construction. See *Dart & Bogue Co.* v. *Slosberg,* 202 Conn. 566, 573, 522 A.2d 763 (1987). Because attachment liens have no common law counterparts; *Connecticut* v. *Doehr,* 500 U.S.    , 111 S. Ct. 2105, 2115, 115 L. Ed. 2d 1 (1991); statutes permitting them have always been strictly construed. *Atlas Garage & Custom Builders, Inc.* v. *Hurley,* 167 Conn. 248, 257–58, 355 A.2d 286 (1974).

Union Trust contends that in *Hubbell* the court misread the plain language of the governing statutes, which have never expressly limited the amount of the judgment that relates back to the date of attachment. It is true that the statute says nothing about the amount that relates back. To the extent that this statutory lacuna creates an ambiguity, the ambiguity must be resolved by the traditional rule of strict construction of statutes in derogation of the common law, a rule of which the legislature was presumably aware when it enacted the statute. Furthermore, since *Hubbell,* the legislature has repeatedly reenacted the prejudgment remedy statute without significantly changing that part

of its language that is presently pertinent. "[T]he legislature is presumed to be aware of the interpretation of a statute and '. . . its subsequent nonaction may be understood as a validation of that interpretation.' " *Phelps Dodge Copper Products Co.* v. *Groppo,* 204 Conn. 122, 134, 527 A.2d 672 (1987), quoting *Ralston Purina Co.* v. *Board of Tax Review,* 203 Conn. 425, 439, 525 A.2d 91 (1987). This presumption is strengthened when the legislature has "affirmatively reenacted" the statute after the interpretation in question. *Phelps Dodge Copper Products Co.* v. *Groppo,* supra, 134; see also *Turner* v. *Scanlon,* 146 Conn. 149, 156, 148 A.2d 334 (1959).

Strong policy reasons also supported, and continue to support, the rule of *Hubbell.* "A maximum limitation is essential in order to preserve the integrity and efficiency of our recording system. The policy of that system, which is rigidly adhered to, requires that the record shall disclose, as nearly as may be, the true state of the title and the nature and extent of the incumbrance upon it. . . . Sound policy requires that the extent of [the lien] shall be known as soon as it exists, in order to preserve the rights of third persons and prevent unnecessary restrictions upon the sale of property." *Hubbell* v. *Kingman,* supra, 20.[4] To the extent

---

[4] Union Trust contends that, because the amount of the attachment can be modified by the court, the land records already provide little real notice to subsequent claimants, because lienors who file after the original attachment receive no notice of the subsequent modification. Because this is not a case in which a plaintiff has persuaded the court to increase the amount attached but has neglected to record the modification, we do not reach this issue. We have upheld against third parties mortgages which fail to state the maximum term of the obligation they secure, but this was because the record "include[d] enough information to allow subsequent creditors, 'by common prudence and by the exercise of ordinary diligence, [to] ascertain the extent of the incumbrance.' " *Dart & Bogue Co.* v. *Slosberg,* 202 Conn. 566, 580, 522 A.2d 763 (1987), quoting *First National Bank* v. *National Grain Corporation,* 103 Conn. 657, 663, 131 A. 404 (1925). Where the

that authorities in other jurisdictions have addressed this issue, they have concurred with the holding of *Hubbell*.[5] We therefore conclude that the trial court should have limited the Union Trust priority rights to the foreclosure sale proceeds to $23,000.

The trial court also found that Clark was not an eligible claimant to that portion of the foreclosure sale proceeds to which Union Trust had no priority. The evidence does not support the factual basis relied upon for this determination and we also disagree with the legal conclusions that the trial court drew therefrom.

The trial court first found that Clark had not relied on Heggelund's equity in the real estate when Clark

encumbrance is an involuntary attachment, however, absent the rule of *Hubbell* v. *Kingman,* 52 Conn. 17 (1884), the land records would not " 'put anyone interested in the inquiry upon a track leading to discovery . . .' "; *Dart & Bogue Co.* v. *Slosberg,* supra, 579, quoting *Sadd* v. *Heim,* 143 Conn. 582, 586, 124 A.2d 522 (1956); since the plaintiff in a lawsuit has no obligation to disclose the merits of its claim to third parties. In cases in which periodic payments without a definite limit were collectible against an attachment, the amount of the attachment itself was a sum certain. See *Artman* v. *Artman,* 111 Conn. 124, 149 A. 246 (1930); *Hein* v. *Hein,* 10 Conn. Sup. 319 (1941).

[5] See, e.g., *Routt County Co.* v. *Stutheit,* 101 Colo. 254, 257, 72 P.2d 692 (1937), quoting *Tilton* v. *Cofield,* 2 Colo. 392, 399 (1874); *Matter of People (Second Russian Ins. Co.),* 255 N.Y. 412, 414–15, 175 N.E. 113 (1931) (Cardozo, C.J.); *Syracuse City Bank* v. *Coville,* 19 How. Pr. 385 (N.Y. 1860); see also *Glendale Fruit Co.* v. *Hirst,* 6 Ariz. 428, 433, 59 P. 103 (1899); C. Drake, Suits by Attachment (6th Ed. 1885) § 227, pp. 207–208; 1 R. Shinn, Attachment and Garnishment (1896) § 317, p. 610; R. Waples, Attachment and Garnishment (2d Ed. 1895) § 911, p. 617 (citing *Hubbell* v. *Kingman,* 52 Conn. 17 [1884]). Union Trust suggested at oral argument that there was some authority to the contrary, but the cases in the source cited by counsel hold only that, between the immediate parties, when the judgment exceeds the amount of the attachment, the entire amount of the judgment may be recovered from the attached property. None of these cases involved the rights of third parties who encumbered the land after attachment but before judgment. See 7 C.J.S., Attachment (1980) § 207, p. 505, citing *Miller & Chesney* v. *James,* 86 Iowa 242, 53 N.W. 227 (1892); *Searle* v. *Preston,* 33 Me. 214 (1851); *Rhodes* v. *Samuels,* 67 Neb. 1, 93 N.W. 148 (1903).

became Heggelund's creditor. Clark correctly notes that the trial court had no evidentiary foundation for such a finding. Furthermore, the rights of an intervening lien creditor do not depend on a factual showing of reliance, either under the relevant statute; General Statutes § 49-27; or the relevant cases. *City National Bank* v. *Stoeckel,* 103 Conn. 732, 744, 132 A. 20 (1926).

The trial court also faulted Clark for not having risked his own money at the foreclosure auction. This factual determination is inconsistent with the report of the committee that undertook the foreclosure sale. That report indicates that Clark was a qualified bidder, had made the required $15,000 deposit and actually made two good faith bids to purchase the property. The court furthermore cited no authority, nor has Union Trust suggested any, for the proposition that the statutory allocation of the proceeds of a foreclosure sale depends on participation in the foreclosure sale itself.

The judgment is reversed and the case is remanded with direction to render a supplemental judgment in accordance with this opinion.

In this opinion the other justices concurred.