[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTIONS TO STRIKE THE COMPLAINT, MOTIONS TO DETERMINE PRIORITIES AND PLAINTIFF'S MOTION FOR JUDGMENT
In this foreclosure action, a defendant, Beachside Funding Corp., as the assignee of a United States District Court judgment in the amount of $1,328,000.00 obtained by the defendant, Banque Paribas, has moved to strike the plaintiffs' complaint to the extent that the complaint designates Beachside Funding Corp. as a defendant in its capacity as the assignee of Banque Paribas' judgment.
Beachside Funding Corp. alleges that an attachment, recorded on the Westport Land Records on March 16, 1989 against the property in issue and filed by Banque Paribas at the commencement of the District Court action predates the plaintiffs' mortgage and the liens of all the other defendants. Beachside Funding Corp. claims that the judgment in the District Court action, which was recorded on July 21, 1992 relates-back to the attachment and therefore has a priority over all the other liens to the full amount of the judgment together with interest, costs and attorneys' fees and, as assignee of that prior lien, it should not have been named as a party defendant. (Beachside Funding Corp. is also the mortgagee under a later recorded mortgage, but claims no such priority in that capacity). Beachside claims as the assignee of the Banque Paribas' judgment, CT Page 8809 it should not have been named as a party defendant, but rather, should have been identified, in accordance with P.B. 186, as an encumbrancer having priority over the encumbrance for which foreclosure is sought.
 I.
This action involves property located at 26 Beachside Avenue in Westport, Connecticut. The plaintiff, Hanover Funding Co., seeks to foreclose its mortgage on that property. (The co-plaintiff, Suburban Development Corp. was assigned a 12% interest in the note and mortgage and the guarantee of payment executed by the defendant Jeanne Dana Peters[1] on March 27, 1992).
Beachside Funding Corp. claims that on or about June 26, 1979, a defendant in the federal action, Jeanne Marie Dana, entered into an agreement with Banque Paribas to borrow $250,000.00. On June 4, 1980, Banque Paribas agreed to lend Jeanne Marie Dana an additional $250,000.00. In December, 1986, Banque Paribas notified Jeanne Marie Dana that she was in default under the agreement. The loans were not repaid.
Beachside further claims that in April 15, 1987, Jeanne Marie Dana acting as vice-president of Centigon, Inc., a corporation which she is alleged to have owned or controlled, conveyed the subject property to herself individually and to herself as trustee for her daughter. Immediately thereafter, she conveyed the property to the defendant, Connaught Properties, Inc. This corporation is also alleged to be owned or controlled by Jeanne Marie Dana.
Against this background, on March 15, 1989, Banque Paribas commenced an action against Jeanne Marie Dana and Connaught Properties, Inc. in the United States District Court for the District of Connecticut: Banque Paribas v. Jeanne Marie Dana, et al., No. B 89-126 (JAC). The first three claims or counts of the complaint concerned the loan agreements. The fourth claim or count was an allegation of fraudulent transfer asserting that the 1987 transfer of the subject property from Jeanne Marie Dana to Connaught Properties, Inc. was in fraud of creditors.
On March 16, 1989, Banque Paribas caused a prejudgment attachment issued by the United States District Court for the District of Connecticut in Docket No. B 89-126 to be filed against Jeanne Marie Dana and Connaught Properties, Inc. in the CT Page 8810 principal amount of $636,683.57. A lis pendens notice dated March 15, 1989 was also filed by Banque Paribas against the property. That notice was recorded on March 21, 1989.
Thereafter, the mortgage deed dated March 21, 1990, from Connaught Properties, Inc. to Hanover Funding Co. to secure a debt of $550,000.00 was recorded against the property on March 22, 1990.
On November 20, 1990, Banque Paribas secured a summary judgment in the United State's District Court litigation against both Jeanne Marie Dana and Connaught Properties, Inc. in the amount of $710,943.88, with regard to the loan claims. A judgment lien was recorded on January 22, 1991. The fourth claim, of fraudulent conveyance, was not resolved.
The defendant, Hurwitz Sagarin, P.C. filed an attachment in the amount of $50,000.00 on March 6, 1991 for unpaid attorneys' fees.
On April 29, 1992, in the District Court, Banque Paribas obtained a judgment which struck the answer of Jeanne Marie Dana and Connaught Properties, Inc., granted summary judgment in favor of Banque Paribas on the fourth count of the complaint and voided the transfer of April 15, 1987 of the subject property from Jeanne Marie Dana to Connaught Properties, Inc. as fraudulent as to Banque Paribas and other creditors. In its order in connection with this judgment, the District Court stated that it would award attorney's fees to Banque Paribas based upon the bad faith manner in which the action had been defended from its inception.
On May 11, 1992, following the order of the District Court, Connaught Properties, Inc. transferred title to the property to Jeanne Marie Dana by quit-claim deed.
On May 19, 1992, Banque Paribas recorded an order of the District Court increasing the prejudgment remedy from $636,638.57 to $1,300,000.00. On June 12, 1992, a further order of the District Court was filed, purporting to increase the prejudgment remedy to $1,700,000.00. In each instance, the District Court ordered that the increase relate back to the original attachment of March 16, 1989.
The defendant, Chemical Bank, filed an attachment in the CT Page 8811 amount of $862,161.25 on July 1, 1992. This defendant claims that pursuant to a note issued by Streets Ahead, Inc., another corporation alleged to be wholly owned by Jeanne Marie Dana, that corporation owes at least $867,161.95 to Chemical. Chemical claims that Jeanne Marie Dana personally guaranteed the payment of all liabilities owed to Chemical by Streets Ahead, Inc.
On July 10, 1992, Banque Paribas, Jeanne Marie Dana and Connaught Properties, Inc. consented to the entry of an Amended Summary Judgment on the first three counts of the complaint, concerning the loan debts, fixing the judgment at the principal amount at $1,328,000, together with interest, costs and attorneys fees; the judgment to be entered jointly and severally against Jeanne Marie Dana and Connaught Properties, Inc. An amended Certificate of Judgment Lien in the amount $1,328,000.00 was recorded by Banque Paribas on July 21, 1992.
On July 30, 1992, Jeanne Marie Dana conveyed the property back to Connaught Properties, Inc. by quit-claim deed. This appears to have been done in anticipation of a stipulation dated August 18, 1992, in which Banque Paribas, Jeanne Marie Dana and Connaught Properties, Inc. agreed to vacate the April 29, 1992 judgment and order concerning the alleged fraudulent conveyance in count 4 of the District Court action. This agreement was approved and adopted by the District Court on October 8, 1992.
On August 31, 1992, Banque Paribas assigned to Beachside Funding Corp. all its interests secured in the District Court action, including the various attachments, liens, lis pendens, stipulations, orders and judgments. The consideration was recited to be $1,100,000.00. and other good and valuable consideration.
On August 31, 1992, Connaught Properties, Inc. issued a mortgage to Beachside Funding Corp. to secure a note of $67,500.00. This mortgage was recorded on September 14, 1992.
on [On] November 12, 1992, Hurwitz Sagarin, P.C. filed a judgment lien in the amount of $48,500.00, referring back to its attachment of March 6, 1991.
In outline, the dates of these liens and those of certain other liens by persons not involved in these motions, are as follows: CT Page 8812
Encumbrance Instrument Dated Recorded Amount
Banque Attachment 3/16/89 3/16/89 $ 636,683.57 Paribas Lis Pendens 3/15/89 3/21/89
Hanover Mortgage 3/21/90 3/22/90 $ 550,000.00
FAPCo Mechanics Lien 10/30/90 11/7/90 $ 2,594.37
Banque Judgment Lien 1/17/91 1/22/91 $ 710,943.88 Paribas
Hurwitz Attachment 3/6/91 3/6/91 $ 50,000.00 Sagafin, P.C.
Tarala Mechanics Lien 8/1/91 8/2/91 $ 2,949.50
Banque Paribas Order/Decree 4/29/92 5/14/92 as to Count 4 5/18/92 Attachment 5/15/92 5/18/92 $1,300,000.00 Modification
 " Attachment 5/19/92 5/19/92 $1,300,000.00 " Attachment 6/12/92 6/12/92 $1,700,000.00
Chemical Bank Attachment 6/30/92 7/1/92 $ 862,161.25
Banque Paribas Judgment Lien 7/21/92 7/21/92 $1,328,000.00 Amended
Beachside Funding Mortgage 8/31/92 9/4/92 $ 67,500.00
M. Miller Mortgage 8/26/92 9/11/92 $ 84,000.00
Hurwitz Judgment Lien 11/10/92 11/11/92 $ 48,500.00 Sagarin, P.C.
It is Beachside Funding Corp.'s position that as a result of Banque Paribas' lis pendens and the intermediate orders of the District Court, Beachside possesses a first priority interest over all other liens on the property to the full extent of the judgment lien ordered by the Federal District Court and an attachment in the amount of $1,700,000.00.
On the other hand, the plaintiffs and the other defendants CT Page 8813 assert that any priority claimed by Beachside in its capacity as assignee of Banque Paribas' interest is limited to the attachment or judgment lien actually recorded at the time each filed its own mortgage or lien. Thus, the foreclosing plaintiffs claim that in addition to tax liens, it is subject only to that portion of Banque Paribas' judgment reflected by the original attachment of $636,683.57.
 II.
Beachside argues that the lis pendens filed on March 21, 1989 constituted notice to all subsequent purchasers and encumbrancers that an action relating to the property was pending. General Statutes Section 52-325 (a). By filing the lis pendens, Banque Paribas gave subsequent creditors record notice that Banque Paribas, in a proceeding to collect a debt, was claiming Connaught Properties, Inc. held title by a fraudulent conveyance which it was seeking to have nullified and set aside. Subsequent creditors had notice that Connaught's interest in the property could be a nullity as a result of the pending action.
"A person who deals with property while it is in litigation does so at his peril. Williams v. Bartlett, 189 Conn. 471, 480
(1983) aff'd 464 U.S. 801 (1983).
Beachside claims that subsequent encumbrancers are bound by all proceedings taken after the recording of a lis pendens to the same extent as if they were made a party to the action General Statutes Section 52-325 (a). Beachside claims that subsequent encumbrancers of the Westport property are bound by the orders of the United States District Court in Paribas v. Dana granting Banque Paribas a judgment lien of $1,328,000 and an attachment of $1,700,000.
Beachside argues that General Statutes 53-325(d) makes it clear that parties other than the property owner (i.e. "any interested party") may file a motion with the court to discharge the lis pendens, if the lis pendens is invalid, never became effective, or has become of no effect. Here, none of these parties bothered to avail themselves of the liberal jurisdictional rules of 52-325(d) and no motion for discharge was filed.
Beachside argues that General Statutes 52-325 provides that "persons whose conveyances or encumbrances are subsequently CT Page 8814 executed or subsequently recorded shall forfeit their rights thereunder, unless they apply to the court in which such action is brought to be made parties thereto prior to the date when the judgment or decree in such action is rendered." Having been given constructive or actual notice of the lis pendens, having failed to file an appearance in the underlying action, as they were specifically authorized to do under 52-325, and having failed to move to discharge or otherwise modify or appeal from the effect of the filed notice of lis pendens, the subsequent encumbrancers cannot be heard to assert priority over that of Banque Paribas and, by assignment, over that of Beachside.
Beachside notes that judgment was entered in Paribas v. Dana on November 21, 1990 (Counts 1, 2 and 3) and on April 29, 1992 (Count 4), which judgments were subsequently amended by the Court by consent, on July 10, 1992. Neither the plaintiff nor any of the other defendants in the instant case entered an appearance in or became a party in the United States District Court case prior to the entry of such judgment.
Beachside urges that further support for the full priority of Banque Paribas's judgment and attachment may be found in Standard 19.1 of the Connecticut bar Association's Connecticut Standards of Title. That standard, entitled "The Nature and Scope of a lis pendens," provides in relevant part:
 After the recording of a lis pendens in an action intended to affect real property, any party who thereafter acquires an interest in such property by way of a conveyance, encumbrance (including a mechanic's and all other inchoate liens, certificates of which are recorded subsequently to the notice of lis pendens), or by way of descent or otherwise, or whose conveyance or encumbrance is subsequently recorded, is bound by all proceedings taken after such recording to the same extent as if he were a party defendant in the action. Any such party may move the court to be made a party defendant.
Beachside contends that the proper procedure for the other encumbrancers was to have moved to be made party defendants in the District Court action and attempt to deal with the lis pendens effect there.
Beachside argues that a lis pendens is intended to provide security for the payment of a claim pending final resolution of CT Page 8815 the case. Williams, supra, at 480. Unless the remedy of the lis pendens is respected here, the subsequent encumbrancers will, in effect, circumvent the judgment of the United States District Court.
 III.
This court, however, is persuaded by the argument of the plaintiffs and the other defendants that any priority to be attributed to the Banque Paribas' attachments and judgments is not afforded by the lis pendens notice.
In the first place, the lis pendens does not apply to counts 1, 2, and 3 of the complaint, since those counts only concern a claimed debt and not an action intended to affect real property. The lis pendens only goes to the fraudulent conveyance count.
As these parties note, in Garcia v. Brooks Street Associates, 209 Conn. 15, 22 (1988), the Supreme Court stated:
 From the face of the statute it is clear that a notice of lis pendens is appropriate only where the pending action will in some way, either directly or indirectly, affect the title to or an interest in the real property itself. See Stratton v. Ward, 39 Conn. Sup. 195, 474 A.2d 113 (1983) (interpreting 52-325 [b] [3], where the court relied on the plain meaning of the statute). Where, as here, a party to a pending action seeks only monetary damages that will not affect the title of the real estate owned by an adverse party, a notice of lis pendens is properly discharged as it no longer serves its purpose, which is to put potential buyers of the real estate and creditors of its owners on notice that the real estate may be subject to pending adverse interests that may affect the title or right to the property. See Kukanskis v. Griffith, 180 Conn. 501, 507, 430 A.2d 21 (1980); 51 Am.Jur.2d, lis pendens 1.
This did not, however, prevent the plaintiff in Garcia from proceeding on her additional attachment.
 Our present holding obviously does not bar any claim for money damages under CIOA. The plaintiffs are free to pursue the CIOA counts of their complaint and the $65,000 bond substituted for their original attachment still exists to satisfy any damages they may be able to prove. Id. CT Page 8816
As these other parties claim, a lis pendens does not have the same effect as an attachment. An attachment and a lis pendens are distinct legal entities. One is not a substitute for another
 "[A]ctions based upon attachments are actions in which the plaintiff seeks to satisfy a money demand i=out of the defendant's property . . . They are to be distinguished from actions brought to establish and enforce previously acquired interests in the property, such actions as to quiet title, to remove a cloud on the title, to set aside a deed, or to foreclose a lien or mortgage."
Atlas Garage and Custom Builders, Inc. v. Hurley, 167 Conn. 248,252, 355 A.2d 286 (1974).
Recording a lis pendens gave notice that the property, record title to which was in Connaught Properties, Inc., might be levied upon to satisfy the debts of the defendant Jeanne Marie Dana. The extent of the priority of any claim through Dana against the subject property was established by the prejudgment remedy of attachment filed by Banque Paribas concurrently with the lis pendens.
Recording a lis pendens on the property did not create a lien, rather it created a record notice of the fraudulent conveyance count. More, however, is needed to secure a priority position. "There can be no question but that the real estate fraudulently conveyed can be attached in an action against the claimed fraudulent grantor. Property fraudulently conveyed may, as to creditors of the grantor, be treated as if no conveyance had been made, if proper legal proceedings are taken to appropriate it to the satisfaction of the grantor's debts." Murphy. v. Dantowitz, 142 Conn. 320, 325-26, 114 A.2d 94 (1955). [Citations omitted]. (Emphasis added).
These other parties claim and this court agrees that the proper legal procedure to establish a priority position in an allegedly fraudulently conveyed property is by attachment. An attachment creates a lien to the extent of the amount of the attachment. Recording a lis pendens creates no lien.
As these parties point out, one of the remedies now available in Connecticut under the Uniform Fraudulent transfer CT Page 8817 Act is a prejudgment attachment against the transferred asset. General Statutes 52-522h(2). That remedy would be unnecessary if, as Beachside asserts, recording a lis pendens creates a lien against the subject property. Indeed, if the lis pendens was sufficient to secure priority, it would have been unnecessary to attach the property and then later modify that attachment.
Finally, any priority Beachside might claim by virtue of the lis pendens was nullified by the acts of the parties in the federal court action. Banque Paribus, Dana and Connaught entered into a stipulation vacating the April 29, 1992 judgment in favor of Banque Paribus on the fraudulent conveyance count in the federal action. Dana returned title to Connaught Properties, Inc. by quit-claim deed. These acts nullified the basis for the lis pendens because Banque Paribas by its stipulation ratified and agreed to the conveyance from defendant Dana to Connaught Properties, Inc. originally alleged to have been fraudulent.
As these encumbrancers note, even if they had intervened in the federal action, they could have obtained no more or greater relief than that to which Banque Paribas eventually stipulated and which the District Court adopted: vacating the judgment holding the conveyance from Dana to Connaught to be fraudulent.
 IV.
Beachside asserts that it has priority over all other creditors because it has a $1,700,000.00 attachment dated March 16, 1989. The plaintiffs and other encumbrancers argue that only $636,638.57 of Beachside's $1,328,000.00 judgment lien should have first priority ahead of the plaintiffs' mortgage. For this, they rely on Union Trust Company v. Heggelund, 219 Conn. 620
(1991). In Heggelund, the court held that a judgment lien placed on property previously attached relates back to the date of, but is limited to the amount of, the attachment. Beachside, however, claims Heggelund is distinguishable from the present case because it did not involve a lawfully modified attachment.
Beachside notes that General Statutes 52-278k permits a court to modify an attachment "upon the presentation of evidence which would have justified such court in modifying or denying such prejudgment remedy at an initial hearing thereunder."
On May 19, 1992, the District Court increased Banque Paribas's original March 16, 1989 attachment of $636,680.57 to CT Page 8818 $1,300,000.00 and ordered that the increase related back to March 16, 1989, the date of the original attachment. On June 12, 1992, the District Court further increased the attachment to $1,700,000.00 and again ordered the increase to relate back to March 16, 1989. Both increases involved the imposition of sanctions and attorneys' fees.
Beachside argues that the Heggelund court, although holding that an attachment is not a growing quantity, automatically increasing with the accumulation of costs and damages, implicitly distinguished a case such as this where the attachment have been modified, when it asserted: "if the amount of the attachment has no juridical significance, there would be no purpose in the statutory proceedings permitting judicial modification of that amount. General Statutes 52-278k." Id., at 625 (Emphasis added).
Beachside argues that Heggelund states the General Assembly purposefully created the mechanism to modify attachments and therefore implies that an attachment lawfully modified under General Statutes 52-278k should be upheld. The Heggelund court held the priority of an attachment depends on the amount stated in the attachment itself. Heggelund, at 625. The amount stated in Beachside's attachment, as modified by the District court, is $1,700,000.00 — more than the judgment lien. Under Heggelund, therefore, Beachside claims it has a first priority for its entire judgment. Any other outcome would, in effect, limit General Statutes 52-278k and undermine the court's power, as in the present case, to impose sanctions and attorneys' fees.
Contrary to the claim of Beachside, the other parties read Union Trust Company v. Heggelund to hold that the priority of a judgment lien relating back to a previously attached property is limited to the amount of the value of the original attachment as against encumbrances filed after the attachment but before the judgment lien. The Supreme Court of Connecticut, in Heggelund, held that an attachment of real estate creats [creates] a lien only for the amount it directs the officer to attach, even though a later judgment for which the attachment furnishes security may be for a larger amount, Id., at 623-24 (citing Hubbel v. Kingman, 52 Conn. 17
(1984)).
They argue and this court agrees that the same principles enunciated in Heggelund should apply to an intervening lienor's priority over a retroactive increase in attachment obtained by a CT Page 8819 court ordered modification. In Heggelund the court had no need to reach the issue of an intervening lienor's attachment where there is a subsequent order that modifies and increases an earlier prejudgment attachment pursuant to General Statutes 52-278k. Id., at 627, n. 4. The Heggelund court did note that the priority of an attachment depends on the amount stated in the attachment itself and that any analysis of probable cause under the prejudgment remedy statutes would be pointless if the attachment were to be "a growing quantity, increasing with the accumulation of costs and enlarging as more damages are demanded." Id., at 625 (citing Hubbell v. Kingman, 52 Conn. 17,20 (1884)). Otherwise, "[u]nless the attachment is limited to the sum stated, a plaintiff could establish priority over all subsequent encumbrancers by showing at the time of the attachment probable cause for the validity of a claim of only one dollar." Id., at 625.
Furthermore, the court in Heggelund noted that a maximum limitation is essential to preserve the integrity and efficiency of the recording system. Under the requirements of the recording system, the record is to disclose as nearly as possible the true state of the title, and the nature and extent of the encumbrance upon it. Id., at 627.
Addressing the plaintiff's claim in Heggelund that arguably: because the amount of the attachment can be modified by the court, the land records already provide little real notice to subsequent claimants, because lienors who file after the original attachment receive no notice of the subsequent modification. Id, n. 4
The Supreme Court explained:
 . . . We have upheld against third parties mortgages which fail to state the maximum term of the obligation they secure, but this was because the record "include[d] enough information to allow subsequent creditors, `by common prudence and by the exercise of ordinary diligence, [to] ascertain the extent of the incumbrance.'" Dart Bogue Co. v. Slosberg, 202 Conn. 566, 580, 522 A.2d 763 (1987), quoting First National Bank v. National Grain Corporation, 103 Conn. 657, 663, 131 A. 404 (1925). Where the encumbrance is an involuntary attachment, however, absent the rule of Hubbell v. Kingman, 52 Conn. 17 (1884), the land records would not "`put anyone interested in the inquiry CT Page 8820 upon a track leading to discovery. . . .'"; Dart Bogue Co. v. Slosberg, supra, 579, quoting Sadd v. Heim, 143 Conn. 582, 586, 124 A.2d 522 (1956); since the plaintiff in a lawsuit has no obligation to disclose the merits of its claim to third parties. In cases in which periodic payments without a definite limit were collectible against an attachment, the amount of the attachment itself was a sum certain. See Artman v. Artman, 111 Conn. 124, 149A. 246 (1930), Hein v. Hein, 10 Conn. Sup. 319 (1941).
Id. at 627, n. 4.
As these parties claim, under the principles enunciated in Heggelund, the priority of a retroactive increase of an attachment as granted to Banque Paribas by court order should be treated no differently than the priority of a judgment lien which exceeds the amount of the attachment it relates back to. Between immediate parties, when the judgment exceeds the amount of the attachment, the entire amount of the judgment may be recovered from the attached property. Id. at 628, fn. 5. But when there are third parties who encumber the land after an attachment but before a judgment, the amount that may be recovered from the attached property is to be limited to the amount of the original attachment.
This court therefore concludes that Banque Paribas' (and therefore its assignee, Beachside Funding Corp.) is an encumbrancer with priority over Hanover's mortgage only to the extent of the original attachment for $636,683.57. The effect of the District Court's order increasing the original attachment is to modify that attachment only as to encumbrances filed after the recordation of a particular modification; but as to encumbrances recorded before the modification, the priority is limited to the status of the attachment or lien as the land records stood before the recordong [recording] of that modification.
 V.
Provided the liens indicated are valid, the listing of law days filed by the plaintiffs in accordance with P.B. 526A accurately reflects this court's position. However, because it does not appear that the pleadings have been closed and because a title search submitted to the court seems to reveal additional purported encumbrances, the plaintiffs' motion for judgment and the defendant Hurwitz Sagarin, P.C.'s motion to determine CT Page 8821 priorities are premature and the court directs that these motions be reclaimed when appropriate.
For the reasons indicated, the defendant Beachside Funding Corp.'s Motion to Strike is denied.
NIGRO, J.
Decision entered in accordanced with the foregoing 10/25/93
Asst. Clerk
All counsel notified 10/25/93