BRIAN CROTTY ET AL. *v.* TUCCIO
DEVELOPMENT, INC.
(AC 30417)

Flynn, C. J., and Lavine and Beach, Js.

Argued December 11, 2009—officially released March 16, 2010

*John R. Williams*, for the appellant (defendant).

*Robert P. Hanahan*, for the appellees (plaintiffs).

*Opinion*

FLYNN, C. J. This appeal addresses issues arising from the trial court's determination of probable cause in granting a prejudgment remedy in the amount of $1.7 million. The defendant, Tuccio Development, Inc., appeals from the court's judgment granting the prejudgment remedy in favor of the plaintiffs, Brian Crotty and Peggy Crotty, upon a finding of probable cause that the defendant had breached a repurchase agreement. On appeal, the defendant claims that the court improperly (1) granted the prejudgment remedy where there was insufficient probable cause, (2) set the amount of the prejudgment remedy and (3) found that certain lots were owned by the defendant and were subject to attachment. We affirm the judgment of the trial court.

In October, 2005, the plaintiffs purchased from the defendant a newly constructed 8000 square foot home in the Whispering Glen subdivision, located in Brookfield, for the price of $1.5 million. The parties signed a sales contract presumably in March, 2005, but the contract was not dated. Paragraph fourteen of the sales contract contained a buyback provision. The parties

dispute the exact content of the provision because some of the language was changed by crossing it out and writing in something else, and some additional language also was handwritten at the end of the paragraph containing the buyback provision. None of these handwritten changes contained the initials of the parties.[1] The contract, with original signatures and the handwritten changes, was admitted into evidence by the court and by the stipulation of the parties. As amended by the handwritten alterations, paragraph fourteen provided: "Seller agrees that, in the event Buyer provides written documentation from Buyer's employer of Buyer's employment relocation to a place in excess of 45 miles from the property described on Schedule A during a period of time ending not later than three (3) years from the date of closing, time being of the essence, upon sixty (60) days written notice from the Buyer, Seller will repurchase the premises described herein for a price of one million six hundred thousand ($1,600,000.00) dollars. This obligation and agreement of the Seller is conditioned upon the premises being in substantially the same condition as of the date of closing, reasonable wear and tear excepted. The parties acknowledge that, if said written notice is not received by the seller, by 5:00 p.m. on the last day of the third (3rd) year period, this obligation shall be null and void and of no further force or effect. The parties shall execute, on the day of closing, an acknowledgment of the agreed upon expiration date of this obligation. This paragraph shall survive closing of title. After the first year for any reason whatsoever should the Buyer decide to sell, the Seller shall be obligated to purchase for the price set forth herein."

By letter dated May 27, 2008, the plaintiffs sought to exercise their rights under paragraph fourteen of the

---

[1] There were many other handwritten changes throughout the contract as well, none of which contained the parties' initials.

sales contract, as they sought to have the defendant buy back the home. When the defendant rejected or ignored the plaintiffs' request, the plaintiffs filed a complaint in the Superior Court alleging breach of contract and a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. (CUTPA), and they sought a prejudgment remedy in the amount of $1.7 million, to be secured by the attachment of several lots owned by the defendant.

The court held a hearing on the prejudgment remedy application on September 29, 2008, at which time four stipulated exhibits were entered into evidence by the plaintiffs. These exhibits included a certified copy of the warranty deed for the home, the Department of Housing and Urban Development settlement statement, the letter sent to the defendant in which the plaintiffs sought to exercise their rights under the buyback provision and the original contract. The defendant appeared through counsel, and no representative thereof testified at the hearing. Brian Crotty was the only person who testified at the hearing. In an October 1, 2008 memorandum of decision, the court found credible the testimony of Brian Crotty, and it found that there was probable cause to believe that the plaintiffs would be successful in prosecuting their complaint. Accordingly, the court granted the application for a prejudgment remedy, ordering that "the plaintiffs may attach to the value of $1.7 million lots 5, 6, 7, 8, 9, 10, 11 and 12 constituting a portion of the real estate of the defendant, which is more particularly described as the 'schedules of real property' in the plaintiffs' application, and as more specifically described in 'Schedule A' appended hereto." This appeal followed.

Initially, we set forth our standard of review. "A prejudgment remedy means any remedy or combination of remedies that enables a person by way of attachment, foreign attachment, garnishment or replevin to deprive

the defendant in a civil action of, or affect the use, possession or enjoyment by such defendant of, his property prior to final judgment . . . . General Statutes § 52-278a (d). A prejudgment remedy is available upon a finding by the court that there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff . . . . General Statutes § 52-278d (a) (1). . . . Proof of probable cause as a condition of obtaining a prejudgment remedy is not as demanding as proof by a fair preponderance of the evidence. . . . The legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. . . . Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false. . . . Under this standard, the trial court's function is to determine whether there is probable cause to believe that a judgment will be rendered in favor of the plaintiff in a trial on the merits. . . .

"As for [the] standard of review [on appeal], [our Supreme Court has instructed that an appellate] court's role on review of the granting of a prejudgment remedy is very circumscribed. . . . In its determination of probable cause, the trial court is vested with broad discretion which is not to be overruled in the absence of clear error. . . . In the absence of clear error, [a reviewing] court should not overrule the thoughtful decision of the trial court, which has had an opportunity to assess the legal issues which may be raised and to weigh the credibility of at least some of the witnesses. . . . [On appeal], therefore, we need only decide whether the trial court's conclusions were reasonable

under the clear error standard." (Citations omitted; internal quotation marks omitted.) *TES Franchising, LLC* v. *Feldman,* 286 Conn. 132, 136–38, 943 A.2d 406 (2008). With this standard in mind, we address the defendant's claims on appeal.

I

The defendant first claims that the court improperly found that there was probable cause to warrant the granting of the plaintiffs' application for a prejudgment remedy. Specifically, it argues that "the issuance of the prejudgment remedy was based solely on the claim of the plaintiff[s] that [uninitialed] handwritten changes made to a contract nevertheless represented the agreement of the parties thereto." We are not persuaded.

The plaintiffs submitted a copy of the signed contract containing a buyout provision, and Brian Crotty testified that this was the copy of the contract that he had signed after his attorney had made the handwritten changes to it. He further testified that this contract then was sent to the defendant's attorney so that signatures of the defendant's representatives, Arthur J. Tuccio, Jr., president of the defendant corporation, and Edward J. Tuccio, vice president of the defendant corporation, could be obtained. After the Tuccios had signed the contract, it was returned to the plaintiffs' attorney. Brian Crotty also testified that after he exercised his right under the buyout provision by sending a letter to the defendant, the defendant failed to respond.

Brian Crotty's testimony was not contradicted during the hearing; the defendant presented no evidence, nor did anyone offer testimony or other evidence on the defendant's behalf. The court found the testimony of Brian Crotty, the only person who testified at the hearing, to be credible, and it found sufficient probable cause to grant the prejudgment remedy. Our review of

the record reveals nothing that would lead us to the conclusion that the defendant has met its burden of showing that the court's approval of the application was clear error. Accordingly, the defendant has failed to demonstrate that it was improper for the court to have granted the plaintiffs' application for a prejudgment remedy.

## II

The defendant next claims that there was no evidence to support the issuance of a prejudgment remedy in the amount of $1.7 million because the plaintiffs still were living in the home and could not show that their damages exceeded that amount. We are not persuaded.

"Because a prejudgment remedy is a statutorily based remedy, we first examine the language of the statute. Section 52-278d (a) requires that a trial court make a probable cause determination as to both the validity of the plaintiff's claim and the amount of the remedy sought. See General Statutes § 52-278d (a); see also *Union Trust Co.* v. *Heggelund,* 219 Conn. 620, 625, 594 A.2d 464 (1991). In other words, to justify issuance of a prejudgment remedy, probable cause must be established both as to the merits of the cause of action and as to the amount of the requested attachment. That dual requirement ensures that a person is not deprived of the use of property without due process of law. . . . *Kinsale, LLC* v. *Tombari,* [95 Conn. App. 472, 482, 897 A.2d 646 (2006)] (*Flynn, C. J.,* dissenting). Therefore, the party seeking the prejudgment remedy must present evidence that is sufficient to enable the court to determine the probable amount of the damages involved. *Ledgebrook Condominium Assn., Inc.* v. *Lusk Corp.,* [172 Conn. 577, 585, 376 A.2d 60 (1977)]. Although the likely amount of damages need not be determined with mathematical precision . . . the plaintiff bears the burden of presenting evidence [that] affords a reasonable

basis for measuring her loss." (Internal quotation marks omitted.) *Kosiorek* v. *Smigelski*, 112 Conn. App. 315, 322–23, 962 A.2d 880, cert. denied, 291 Conn. 903, 967 A.2d 113 (2009).

The defendant argues that even if a prejudgment remedy were found to be proper in this case, the plaintiffs' injury, if any, necessarily would be "limited to the difference . . . between the fair market value of the property and the $1,600,000 repurchase price [of the home]." We are not persuaded by such an argument. In this case, the court specifically found that the plaintiffs had submitted sufficient evidence to demonstrate probable cause that the parties' contract required the defendant to *repurchase* the home upon the plaintiffs' exercise of such an option and that the defendant "failed to comply with its obligations under . . . the contract regarding the repurchase of the property . . . ." The repurchase price as established by the evidence was $1.6 million.

After reviewing the record in this case, including the application for the prejudgment remedy, the accompanying affidavit and complaint, as well as the evidence presented at trial, we conclude that the defendant has failed to demonstrate that it was clear error for the court to have granted the application for a prejudgment remedy in the amount of $1.7 million. In their application for a prejudgment remedy, the plaintiffs requested an attachment in the amount of $1.7 million, stating that there was probable cause that they would be successful in prosecuting their claims against the defendant in an amount equal to or greater than the amount sought in the prejudgment remedy. The plaintiffs' complaint alleged against the defendant a breach of contract and a violation of CUTPA, and it sought money damages, statutory prejudgment interest, specific performance, punitive damages, attorney's fees under General Statutes § 42-110g and other equitable relief. In support of their application, the plaintiffs presented evidence of

their contract with the defendant, which required the defendant to repurchase the plaintiffs' residence for $1.6 million upon the plaintiffs' timely request. They also presented evidence that they had exercised their option to have the defendant repurchase the property and that the defendant had failed to respond. The court credited all of this evidence and concluded that "there [was] probable cause to sustain the validity of the plaintiffs' claims . . . ." The defendant has referred us to nothing in the record that would reveal that the court's conclusions were unreasonable under the clear error standard.

## III

The defendant next claims that the court improperly found that certain parcels of real property were owned by the defendant and were subject to attachment. It argues that the court ordered the attachment of these parcels without evidence to show probable cause that the defendant had any title interest in them and "in violation of due process of law." It also argues that the court should have entered an order simply permitting attachment of the defendant's assets, rather than the attachment of specific lots. We are not persuaded. Furthermore, insofar as the defendant attempts to raise a constitutional due process argument, such a claim is inadequately briefed, and we will not afford it review.

The plaintiffs argue that "[t]he transcript of the proceedings at the prejudgment hearing and the trial court's decision do not reflect any such issue being raised before the trial court. Counsel for both parties told the [c]ourt that the defendant owned some remaining lots in the Whispering Glen subdivision. If the defendant does [not] own the lots, then any attachment recorded on the land records would not take effect against the lots. This claimed issue is of no consequence as a matter of basic title searching. An attachment will not take

effect against real estate not owned of record by the defendant." Reviewing the record and the court's memorandum of decision, we agree with the plaintiffs.

In this case, the court specifically ordered "that the plaintiffs may attach to the value of $1.7 million lots 5, 6, 7, 8, 9, 10, 11 and 12 constituting a portion of the real estate of *the defendant*, which is more particularly described as the 'schedules of real property' in the plaintiffs' application, and as more specifically described in 'Schedule A' appended hereto." (Emphasis added.) Schedule A, attached to the court's memorandum of decision, provides: "All those certain pieces or parcels of land, with all the improvements thereon, situated in the Town of Brookfield, County of Fairfield and State of Connecticut being shown as Lots 5, 6, 7, 8, 9, 10, 11 and 12 on a certain map entitled 'TOWN OF BROOK-FIELD FAIRFIELD COUNTY, CONN. FINAL SUBDIVISION WHISPERING GLEN Date: August 7, 2002 Last revised 12-20-02 Scale: 1[inch] = 100 [feet]', which map is recorded in the Brookfield Town Clerk's office as Map No. 893.

"Being a portion of the premises conveyed to [the defendant] by Craig L. Froehlich by Warranty Deed dated April 28, 2004 and recorded April 28, 2004 in Volume 481, Page 197 of the Brookfield Land Records."

Reviewing the order of the court, we conclude that the order clearly permitted the attachment of a portion of the real estate of *the defendant*. Should the defendant not have had an interest in certain of the property set forth in the order, the order would not apply to that property, and the defendant would suffer no harm or infringement on its property rights. Accordingly, we find no merit to the defendant's argument.

The judgment is affirmed.

In this opinion the other judges concurred.