## CC CROMWELL, LIMITED PARTNERSHIP *v.* ANDREW ADAMES ET AL.
### (AC 31101)

Bishop, Robinson and Hennessy, Js.

Argued April 16—officially released September 28, 2010

*Noah J. Schafler*, for the appellants (defendants).

*Edward V. Longinotti*, with whom was *David A. Hill, Jr.*, for the appellee (plaintiff).

*Opinion*

ROBINSON, J. The defendants, Andrew Adames and Christopher Quiroga, managing members of Senor Panchos of Cromwell, LLC (Senor Panchos), appeal from the order of the trial court granting the application for a prejudgment remedy filed by the plaintiff, CC

Cromwell, Limited Partnership (Cromwell). On appeal, the defendants claim that the court improperly (1) found probable cause to support the issuance of a pre-judgment remedy and (2) determined the value of the attached property. The defendants have provided an inadequate record to review their claims, and, accordingly, we affirm the judgment of the trial court.

The following facts and procedural history are necessary to the resolution of the defendants' appeal. In October, 2007, Guadalajara & Vallarta, LLC, former tenants in a restaurant space owned by Cromwell in Crossroads of Cromwell, a shopping center, executed an assignment, consent and amendment of the original lease (assignment) to Senor Panchos to operate a restaurant in the leased space formerly occupied by Guadalajara & Vallarta, LLC. The assignment both assigned the lease to Senor Panchos and extended the term of the lease from June 30, 2009, to July, 2014. The agreement also gave Cromwell a security interest in the equipment "in [the restaurant space] and [whatever equipment] would be in there to own and operate a restaurant," as collateral to ensure that Senor Panchos paid the rent due under the lease.[1] In September, 2008, Senor Panchos stopped paying the owed rent to Cromwell. In October, 2008, without notice to Cromwell, Senor Panchos ceased operations and took all of the equipment out of the restaurant. On October 15, 2008, Cromwell sent a letter to Senor Panchos notifying it that it was in default

---

[1] The agreement provides in pertinent part: "As security for the Assignee's payment of sums due under the Lease and the performance of all of the Assignee's terms, covenants and conditions contained in the Lease, the Assignee hereby grants to the Landlord a security interest in the property of Assignee described below . . . . The Collateral shall consist of Goods, as hereinafter defined, Inventory as hereinafter defined and Equipment, as hereinafter defined. For the purposes of this security interest, Goods, Inventory and Equipment shall have the same meaning as those terms are defined in the Uniform Commercial Code, as adopted and amended in Connecticut."

for nonpayment under the lease. The letter further reminded Senor Panchos that Cromwell had a security interest in all of the restaurant equipment in the premises and that it should not be removed.

Robert Rieger, president of Cromwell, testified that Senor Panchos owed $156,000 in interest on the unpaid rent and $17,000 to $18,000 in administrative fees but that he believed that Cromwell would be able to mitigate these damages to approximately $125,000. Rieger further testified that Adames told him that he "had taken the equipment out [of the restaurant space] and was selling it . . . and he didn't make it clear in any which way that he was selling it for the benefit of the [limited liability company], that he was selling it for the benefit or using it in other restaurants that belonged to him."

In January, 2009, Cromwell filed a revised complaint against the defendants, alleging that they were each acting in their individual capacity when they violated the assignment by removing the collateral that was the subject of Cromwell's security interest from the leased premises. Cromwell also claimed that the removed collateral was worth $153,000. On February 4, 2009, Cromwell filed an application for a prejudgment remedy to secure the sum of $153,000. On May 14, 2009, the court, *Burgdorff, J.*, granted the application, finding "probable cause to sustain the validity of the plaintiff's claim . . . ." This appeal followed. Additional facts will be set forth as necessary.

I

First, the defendants claim that the court improperly found probable cause to support the application for a prejudgment remedy. Specifically, the defendants argue that there was no evidence to support a finding that Quiroga was acting individually in removing the collateral from the leased premises. Similarly, the defendants contend that the evidence that Adames told Rieger that

he "had taken the equipment out and was selling it," but did not specify whether it was for his individual benefit or the benefit of Senor Panchos, was insufficient to support a finding that Adames was acting in his individual capacity.

The trial court may grant a prejudgment remedy on a finding that "there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff . . . ." General Statutes § 52-278d (a) (1). "Proof of probable cause as a condition of obtaining a prejudgment remedy is not as demanding as proof by a fair preponderance of the evidence." (Internal quotation marks omitted.) *Crotty* v. *Tuccio Development, Inc.*, 119 Conn. App. 775, 779, 990 A.2d 888 (2010). "The trial court has broad discretion to determine the plaintiff's probable success at a trial on the merits of its case. . . . Moreover, a prejudgment remedy hearing is not contemplated to be a full scale trial on the merits, which necessarily will mean that the evidence presented at the hearing will not be as well developed as it would be at trial, particularly when . . . the parties have not finished the discovery process." (Citation omitted.) *TES Franchising, LLC* v. *Feldman*, 286 Conn. 132, 143, 943 A.2d 406 (2008).

The defendants have failed to present us with an adequate record to review the trial court's finding of probable cause. "[T]he appellant bears the burden of providing an appellate court with an adequate record for review. . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of decision . . . [or] to clarify the legal basis of a ruling. . . .

"It is well settled that [a]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . [P]roper utilization of the motion for articulation serves to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal. . . . The . . . failure to seek an articulation of the trial court's decision to clarify the aforementioned issues and to preserve them properly for appeal leaves this court without the ability to engage in a meaningful review." (Internal quotation marks omitted.) *J.K. Scanlan Co.* v. *Construction Group, Inc.*, 80 Conn. App. 345, 351–52, 835 A.2d 79 (2003).

In the present case, the court did not provide a memorandum of decision explaining its findings of fact or legal reasoning. This court is unable to determine from the record what testimony the trial court credited and what evidence persuaded the court that there was probable cause that judgment would be rendered in the plaintiff's favor. The defendants argue that there is no evidence that Quiroga removed the collateral from the leased premises. Further, the defendants assert that nothing indicates that either of them acted in their individual capacity because the only evidence that Adames was acting in his individual capacity when he moved the equipment, his conversation with Rieger, is vague. The plaintiff argues that, pursuant to Connecticut jurisprudence, because the defendants committed a tort, they are both personally liable and liable as members of Senor Panchos. We cannot discern from the record whether the court credited this theory, found the testimony regarding Rieger's conversation with Adames persuasive or based its decision on other evidence or legal theories entirely. In the absence of a motion for articulation, we will not speculate as to the findings made and

legal reasoning applied by the court, and, thus, we will not address the merits of the defendants' claim.

## II

, Second, the defendants claim that the court improperly valued Cromwell's security interest and, consequently, the amount for which the prejudgment remedy was granted. The defendants argue that because Senor Panchos purchased all of the assets of Guadalajara & Vallarta, LLC, for $50,000, the value of the collateral is far less than $153,000, the amount of the prejudgment remedy. Further, the defendants maintain that Kenneth Katz, a personal property appraiser, who was called as an expert witness, used a flawed approach to determine the value of the collateral. Specifically, the defendants allege that Katz did not physically examine the collateral and incorrectly used the purchase price of the equipment when new, less depreciation, rather than the actual purchase price paid by the defendants, minus depreciation.

"[T]o justify issuance of a prejudgment remedy, probable cause must be established *both* as to the merits of the cause of action and as to the amount of the requested attachment. That dual requirement ensures that a person is not deprived of the use of property without due process of law." (Emphasis in original; internal quotation marks omitted.) *TES Franchising, LLC* v. *Feldman,* supra, 286 Conn. 146. "We have held that in an application for a prejudgment remedy, the amount of damages need not be determined with mathematical precision. . . . A fair and reasonable estimate of the likely potential damages is sufficient to support the entry of a prejudgment attachment. . . . Nevertheless, the plaintiff bears the burden of presenting evidence which affords a reasonable basis for measuring her loss." (Citations omitted; internal quotation marks

omitted.) *Rafferty* v. *Noto Bros. Construction, LLC*, 68 Conn. App. 685, 693, 795 A.2d 1274 (2002).

Again, the defendants have failed to provide us with an adequate record to review the court's findings as to the amount of the prejudgment remedy. This court cannot determine whether the trial court made a fair and reasonable estimate of the value of the collateral without knowing what evidence the court used in its calculations. We can only speculate as to what mathematical formula was utilized by the court and which of the various sums presented through expert testimony and the defendants' testimony about the purchase price of the collateral the court may have relied on in reaching $153,000 as the final valuation of the collateral. We, therefore, decline to review this claim.

The judgment is affirmed.

In this opinion the other judges concurred.