# STANLEY KOSIOREK, EXECUTOR (ESTATE OF STANISLAW KOSIOREK) *v.* JACEK I. SMIGELSKI
## (AC 29477)

Flynn, C. J., and DiPentima and Lavine, Js.

Argued December 1, 2008—officially released January 27, 2009

*Jacek I. Smigelski*, pro se, the appellant (defendant).

*William J. Sweeney, Jr.*, for the appellee (plaintiff).

*Opinion*

FLYNN, C. J. The defendant, Jacek I. Smigelski, appeals from the judgment of the trial court granting a prejudgment remedy in favor of the plaintiff, Stanley Kosiorek, executor of the estate of Stanislaw Kosiorek (decedent). On appeal, the defendant claims that the court improperly (1) found that there was probable cause to grant the prejudgment remedy, improperly taking into consideration the decision of the Probate Court, and (2) issued a prejudgment remedy in the amount of $54,833.33 without taking into consideration any potential defenses or counterclaims. We affirm the judgment of the trial court.

The record reveals the following facts. The plaintiff submitted an affidavit in support of his application for a prejudgment remedy in which he averred the following. On July 12, 2004, the Plainville Probate Court appointed the plaintiff as the executor of the estate of the decedent. The estate hired attorney John Matulis to file an action in the Superior Court, seeking to void a quitclaim deed to 28 Terra Road in Plainville that the decedent had given to his new wife (widow) shortly

before he died. The action also sought to have the marriage declared null and void. During pretrial, it was reported that the estate could settle with the widow for $45,000. Matulis withdrew from the case, and, on June 15, 2006, Kosiorek entered into a written fee agreement with the defendant, to represent the interests of the estate in its action against the widow, and he gave the defendant a $5000 retainer.[1] On August 16, 2006, the action was withdrawn pursuant to a settlement agreement in which the estate agreed to pay the widow $35,000 in exchange for her agreement to convey all right, title and interest to the house located at 28 Terra Road. The widow also agreed to release the estate from any and all claims that she might have against it. The settlement was not brought before the Probate Court for approval. On December 21, 2006, the house was sold, and the estate received the net sum of $155,300.82; the defendant charged the estate a total of $70,833.33 for his services.[2] These fees were never

---

[1] The written fee agreement reveals a hybrid fee structure, which provided that the fee was "based on an hourly charge of $225 per hour or [that it was] contingent upon recovery of benefits and shall be ONE-THIRD of the gross judgment or settlement, which ever amount is greater." In addition, the plaintiff also was required to give the defendant a $5000 retainer.

[2] The defendant's disbursement statement, dated December 26, 2006, provided:
"Gross amount of settlement; (value of real estate
$257,000.00) Sale Price: 28 Terra Road, Plainville, CT;
$212,500
Attorney's Fees according to agreement 1/3 of
the gross amount of settlement that is (33.33% of $257,000.00
or $85,665.81) less courtesy of $14,832.48; less $5,000.00
retainer or                                                    $65,833.33

Plainville Probate Court fees in re:
Estate of Stanislaw Kosiorek (04-0053)                         $1,004.99

Net Proceeds from the closing          $155,300.82

Less:                                  $65,833.33

Less                                   $1,004.99

Total due estate of Stanislaw Kosiorek  $88,462.50

TOTAL                                  $155,300.82"
In an "amended" disbursement statement, dated May 7, 2007, the defendant changed his calculations. The May 7, 2007 statement provided:

approved by the Probate Court. On January 7, 2007, the estate petitioned the Probate Court for a hearing to compromise claim and to determine the reasonableness of the fees charged to the estate by the defendant. On May 21, 2007, the Probate Court found that the defendant's fees were excessive and unreasonable. It further found that a reasonable fee was $16,000. The Probate Court ordered the plaintiff to restore to the estate the sum of $54,833.33. Despite the plaintiff's demands that the defendant return these funds, the defendant has not done so.

In the plaintiff's unsigned complaint, which was attached to his application for a prejudgment remedy, he alleged five counts against the defendant: disgorgement, quantum meruit, a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., civil conversion and constructive trust. The court heard argument on the application for a prejudgment remedy on September 11 and 12,

---

"Gross amount of settlement: Sale Price, 28 Terra Road, Plainville, CT; $212,500.00
[Defendant] Attorney's Fees according to the agreement;
1/3 of the gross amount of settlement that is
(33.33% of $212,500.00 or $70,832.63); less $5,000.00 retainer;
plus, $1,000.00 fee to Mr. Jeffrey Luber, expert fee; less courtesy $999.30; total fee due     $65,833.33

Probate Court representation fees, no charge.

Plainville Probate Court fees in re:
Estate of Stanislaw Kosiorek (04-0053)     $1,004.99

Net Proceeds from the closing     $155,300.82

| | | |
|---|---|---|
| Less attorneys fees | $65,833.33 | |
| Less probate court fees | $1004.99 | |
| Total due estate of Stanislaw Kosiorek | | $88,462.50 |
| TOTAL | | $155,300.82" |

The defendant noted on the amended disbursement statement that he did not charge any fees for probate work.

The defendant also explained on the amended disbursement statement that the net proceeds from the closing were "obtained after deduction of $42,500.00 gift of equity to Adam Kosiorek [the nephew of the plaintiff, who purchased the home] and after deduction for closing costs and conveyance fee; please con[s]ult the HUD form."

2007, and it concluded that the plaintiff had met suffi-
ciently his burden of demonstrating probable cause
with respect to the CUTPA claim. Finding probable
cause on this claim, the court did not consider whether
there was probable cause as to the remaining claims,
and it approved the application for a prejudgment rem-
edy. This appeal followed.

We begin with a statement of the law governing pre-
judgment remedies and our limited role on review. "A
prejudgment remedy means any remedy or combination
of remedies that enables a person by way of attachment,
foreign attachment, garnishment or replevin to deprive
the defendant in a civil action of, or affect the use,
possession or enjoyment by such defendant of, his prop-
erty prior to final judgment . . . . General Statutes
§ 52-278a (d). A prejudgment remedy is available upon
a finding by the court that there is probable cause that
a judgment in the amount of the prejudgment remedy
sought, or in an amount greater than the amount of the
prejudgment remedy sought, taking into account any
defenses, counterclaims or set-offs, will be rendered in
the matter in favor of the plaintiff . . . . General Stat-
utes § 52-278d (a) (1). . . . Proof of probable cause as
a condition of obtaining a prejudgment remedy is not
as demanding as proof by a fair preponderance of the
evidence. . . . The legal idea of probable cause is a
bona fide belief in the existence of the facts essential
under the law for the action and such as would warrant
a man of ordinary caution, prudence and judgment,
under the circumstances, in entertaining it. . . . Proba-
ble cause is a flexible common sense standard. It does
not demand that a belief be correct or more likely true
than false. . . . Under this standard, the trial court's
function is to determine whether there is probable
cause to believe that a judgment will be rendered in
favor of the plaintiff in a trial on the merits. . . .

"As for [the] standard of review [on appeal], [our Supreme Court has instructed that an appellate] court's role on review of the granting of a prejudgment remedy is very circumscribed. . . . In its determination of probable cause, the trial court is vested with broad discretion which is not to be overruled in the absence of clear error. . . . In the absence of clear error, [a reviewing] court should not overrule the thoughtful decision of the trial court, which has had an opportunity to assess the legal issues which may be raised and to weigh the credibility of at least some of the witnesses. . . . [On appeal], therefore, we need only decide whether the trial court's conclusions were reasonable under the clear error standard." (Citations omitted; internal quotation marks omitted.) *TES Franchising, LLC* v. *Feldman*, 286 Conn. 132, 136–38, 943 A.2d 406 (2008). With this standard in mind, we turn to the defendants' specific claims on appeal.

I

The defendant first claims that the trial court improperly found that there was probable cause to grant the prejudgment remedy. The defendant claims that the court improperly based that finding on its consideration of the decision of the Probate Court, where the plaintiff "presented no evidence of his own in regard to the invalidity or unreasonableness of the [fee] agreement . . . ." He also contends that "[f]or a finding of a CUTPA violation . . . it is not sufficient to allege, as a matter of law, that the fee appears to be unreasonable or unfair." Accordingly, he argues that because "the plaintiff has not shown enough factual evidence or alleged enough in order for the court to find probable cause of a CUTPA violation here . . . the appeal should be sustained and the decision of the trial court reversed." We are not persuaded.

"CUTPA, by its own terms, applies to a broad spectrum of commercial activity. The operative provision

of the act . . . states merely that [n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. Trade or commerce, in turn, is broadly defined as the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state. . . . The entire act is remedial in character . . . and must be liberally construed in favor of those whom the legislature intended to benefit. . . .

"Whether a practice is unfair and constitutes a violation of CUTPA is a question of fact. . . . Our Supreme Court has explained that [i]t is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy. . . . In order to enforce this prohibition, CUTPA provides a private cause of action to [a]ny person who suffers any ascertainable loss of money or

property, real or personal, as a result of the use or employment of a [prohibited] method, act or practice . . . ." (Citations omitted; internal quotation marks omitted.) *Kendall* v. *Amster*, 108 Conn. App. 319, 328–29, 948 A.2d 1041 (2008).

We conclude that the court's determination regarding the CUTPA count was proper and that the defendant has failed to demonstrate that it was clear error for the court to have granted the application for a prejudgment remedy. Having reviewed the record, we find that there was adequate evidence before the court for it to conclude that there was probable cause that the defendant violated CUTPA and that judgment would be rendered in favor of the plaintiff with respect to his CUTPA claim. See *Updike, Kelly & Spellacy, P.C.* v. *Beckett*, 269 Conn. 613, 656, 850 A.2d 145 (2004) (conduct of law firm in obtaining business and negotiating fee contracts does fall within ambit of entrepreneurial activities subject to CUTPA). Furthermore, the defendant cites no statute or case law that would prohibit the court from considering a ruling of the Probate Court, which was admitted into evidence, when considering the merits of an application for a prejudgment remedy.

II

The defendant next claims that the court improperly issued a prejudgment remedy in the amount of $54,833.33 without taking into consideration any potential defenses or counterclaims. We conclude that the defendant has not shown that the court's decision was clear error, and, therefore, we decline to disturb it.

"Because a prejudgment remedy is a statutorily based remedy, we first examine the language of the statute. Section 52-278d (a) requires that a trial court make a probable cause determination as to both the validity of the plaintiff's claim and the amount of the remedy sought. See General Statutes § 52-278d (a); see also

*Union Trust Co.* v. *Heggelund,* 219 Conn. 620, 625, 594 A.2d 464 (1991). In other words, to justify issuance of a prejudgment remedy, probable cause must be established *both* as to the merits of the cause of action and as to the amount of the requested attachment. That dual requirement ensures that a person is not deprived of the use of property without due process of law. . . . *Kinsale, LLC* v. *Tombari,* [95 Conn. App. 472, 482, 897 A.2d 646 (2006)] (*Flynn, C. J.,* dissenting). Therefore, the party seeking the prejudgment remedy must present evidence that is sufficient to enable the court to determine the probable amount of the damages involved. *Ledgebrook Condominium Assn., Inc.* v. *Lusk Corp.,* [172 Conn. 577, 585, 376 A.2d 60 (1977)]. Although the likely amount of damages need not be determined with mathematical precision . . . the plaintiff bears the burden of presenting evidence [that] affords a reasonable basis for measuring her loss. . . . *Rafferty* v. *Noto Bros. Construction, LLC,* 68 Conn. App. 685, 693, 795 A.2d 1274 (2002)." (Emphasis in original; internal quotation marks omitted.) *TES Franchising, LLC* v. *Feldman,* supra, 286 Conn. 145.

We have reviewed the entire record, including the plaintiff's affidavit, which was included with the application for prejudgment remedy. The plaintiff has provided evidence that supports the amount of the attachment.[3] Given our limited scope of review, and the fact that damages in an application for a prejudgment remedy need not be determined with mathematical precision; see *Rafferty* v. *Noto Bros. Construction, LLC,* supra, 68 Conn. App. 693; we cannot conclude that the decision of the court to order an attachment in the amount of $54,833.33 constituted clear error. Although the defendant argues that the court did not take into

---

[3] We also note that the plaintiff had sought a remedy that included reasonable attorney's fees and punitive damages, which the court declined to grant, leaving such claims for a trial on the merits.

consideration his defenses or counterclaims, there is no evidence in the record to support such a contention. The court clearly articulated the proper standard in its memorandum of decision, including the necessity of taking into consideration the defenses and counterclaims of a defendant. As our Supreme Court explained in *TES Franchising, LLC* v. *Feldman,* supra, 286 Conn. 142, "[A]n appellate court is entitled to presume that the trial court acted properly and considered all the evidence. . . . The [trial] court's role in . . . a hearing [on an application for a prejudgment remedy] is to determine probable success by weighing probabilities. . . . [T]his weighing process applies to both legal and factual issues." (Internal quotation marks omitted.) Id., quoting *Doe* v. *Rapoport,* 80 Conn. App. 111, 116–17, 833 A.2d 926 (2003).

The judgment is affirmed.

In this opinion the other judges concurred.