******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STANLEY VALENCIS ET AL.
*v.* DAVID NYBERG ET AL.
(AC 36320)

Alvord, Mullins and Schaller, Js.

*Argued April 7—officially released October 27, 2015*

(Appeal from the Superior Court, judicial district of
Hartford, Peck, J.)

*Christopher M. Licari*, for the appellants
(defendants).

*Jill Hartley*, for the appellees (plaintiffs).

*Opinion*

SCHALLER, J. The defendants David Nyberg and CSM North, LLC (CSM),[1] appeal from the judgment of the trial court awarding a prejudgment remedy in favor of the plaintiffs, Stanley Valencis, ACSYS, Inc. (ACSYS), and MIG Ventures, LLC (MIG), in the amount of $1,517,389.40.[2] On appeal, the defendants claim that (1) the court improperly granted the application for a prejudgment remedy without taking into account the defenses raised by the defendants, (2) there was insufficient evidence to grant the application for a prejudgment remedy, and (3) the court improperly failed to make a specific finding of damages for each count for which it found probable cause. We disagree with these claims, and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal, which stems from what the court described as a "construction contract gone awry." In the plaintiffs' unsigned complaint attached to their application for a prejudgment remedy, they alleged, inter alia, the following causes of action: breach of express contract, breach of implied contract, and breach of the covenant of good faith and fair dealing (contract claims); promissory estoppel, unjust enrichment, breach of fiduciary duty, fraud, negligent misrepresentation, conversion, statutory theft, and violation of General Statutes § 42-110a et seq., the Connecticut Unfair Trade Practices Act (CUTPA).[3] All of the counts were directed at the defendants, with the exception of the breach of fiduciary duty, fraud and negligent misrepresentation counts, which applied only to Nyberg individually. The parties presented evidence, made oral argument, and filed briefs. The court found probable cause on all but the breach of fiduciary duty count and granted a prejudgment remedy in the amount of $1,517,389.40.

In granting the prejudgment remedy, the court found the following facts as stated in its memorandum of decision. In 2011, Nyberg negotiated the purchase of a property located at 1577 New Britain Avenue in Farmington (property) in the name of CSM.[4] The plaintiffs acquired the property from CSM. Valencis, the president of ACSYS, entered into an oral agreement with Nyberg, who described himself as a " 'handshake kind of business person,' " regarding the renovation of the property, which would act as the new headquarters of ACSYS.

Under the contract, Nyberg was to act as general contractor of the project to "gut and totally renovate the building," with Gerald Ginsberg, an independent contractor hired by CSM, acting as the project manager. Early on in the project, the budget was approximately $2 million, consisting of a $1.5 million purchase price and $647,000 for the anticipated design and "build out."

The project initially was projected to be completed in December, 2011, or January, 2012.

The project was not completed until August, 2012, at a total cost of between $3.7 and $3.8 million. In 2011 and early 2012, the plaintiffs made a number of payments to CSM in advance on the basis of Nyberg's representation that he could save 30 to 40 percent by paying for labor and materials up front. This included payments to CSM for construction work before any was performed and for materials before they were delivered. Amid questioning by the plaintiffs regarding when the work would be performed and when the materials they had paid for would be delivered, Ginsberg resigned as project manager and was replaced by Frank Cotrona, another independent contractor, in late January or early February, 2012. Cotrona began investigating the status of payments made by the plaintiffs and the overall progress of the project. With his help, the plaintiffs eventually concluded that a number of subcontractors had not been paid and a variety of materials had not been purchased, despite the payments made by the plaintiffs to the defendants. The plaintiffs also discovered that the defendants never obtained a general building permit.

The court determined that the plaintiffs had met their burden of establishing probable cause with respect to, inter alia, their contract claims and the claims for promissory estoppel, unjust enrichment, fraud, negligent misrepresentation, conversion, statutory theft and violation of CUTPA. The court found treble damages of $1,205,115.12 pursuant to the statutory theft count; see General Statutes § 52-564; and $312,374.28 for the remaining damages, for a total of $1,517,389.40. The court declined to award punitive damages pursuant to the CUTPA claim because Nyberg invoked his fifth amendment privilege against self-incrimination.[5] This appeal followed.

At the outset, we identify the relevant legal principles and our standard of review. "We begin with the law governing prejudgment remedies and our limited role on review. A prejudgment remedy means any remedy or combination of remedies that enables a person by way of attachment, foreign attachment, garnishment or replevin to deprive the defendant in a civil action of, or affect the use, possession or enjoyment by such defendant of, his property prior to final judgment . . . . General Statutes § 52-278a (d). A prejudgment remedy is available upon a finding by the court that there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims or setoffs, will be rendered in the matter in favor of the plaintiff . . . . General Statutes § 52-278d (a) (1). . . . Proof of probable cause as a condition of obtaining a prejudgment remedy is not as demanding as proof by

a fair preponderance of the evidence. . . . The legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. . . . Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false. . . . Under this standard, the trial court's function is to determine whether there is probable cause to believe that a judgment will be rendered in favor of the plaintiff in a trial on the merits. . . .

"As for our standard of review, [our Supreme Court has] stated: [An appellate court's] role on review of the granting of a prejudgment remedy is very circumscribed. . . . In its determination of probable cause, the trial court is vested with broad discretion which is not to be overruled in the absence of clear error. . . . [W]e have consistently enunciated our standard of review in these matters. In the absence of clear error, this court should not overrule the thoughtful decision of the trial court, which has had an opportunity to assess the legal issues which may be raised and to weigh the credibility of at least some of the witnesses. . . . [On appeal], therefore, we need only decide whether the trial court's conclusions were reasonable under the clear error standard." (Citations omitted; internal quotation marks omitted.) *TES Franchising, LLC* v. *Feldman*, 286 Conn. 132, 136–38, 943 A.2d 406 (2008); see also *Landmark Investment Group, LLC* v. *Calco Construction & Development Co.*, 141 Conn. App. 40, 49–50, 60 A.3d 983 (2013). Under the clear error standard, we review the record with "a heightened standard of deference that exceeds the level of deference afforded under the abuse of discretion standard" and will overrule the granting of a prejudgment remedy "only if we are left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *TES Franchising, LLC* v. *Feldman*, supra, 138 n.6; *Travelers Casualty & Surety Co. of America* v. *Caridi*, 144 Conn. App. 793, 797, 73 A.3d 863 (2013).

I

The defendants claim that the court improperly granted the prejudgment remedy without taking into account their defenses and, furthermore, that the evidence was insufficient in light of those defenses. Specifically, they argue that the court failed to give adequate consideration to the following defenses, or, if considered, that these defenses resulted in insufficient evidence to grant a prejudgment remedy: (1) the defense to the contract claims that Nyberg was not liable personally under the contract, (2) the defense to the plaintiffs' claims for promissory estoppel, fraud, and negligent misrepresentation that any statements made by the

defendants were not the cause of payments made by the plaintiffs, (3) the defense to the plaintiffs' claims for conversion and statutory theft that the plaintiffs never made a demand for return of funds and (4) the defense to the plaintiffs' claim for statutory theft that the defendants did not intend to deprive the plaintiffs of funds.

## A

The claim that the trial court failed to consider the defendants' defenses is premised on the requirement in the prejudgment remedy statute, § 52-278d (a), that in determining probable cause for a prejudgment remedy the court should take "into account any defenses, counterclaims or set-offs . . . ."[6]

The defendants place great weight on the analysis of § 52-278d (a) in *TES Franchising, LLC* v. *Feldman*, supra, 286 Conn. 141–42, claiming that that case requires a trial court to address specifically any defenses raised by the defendant.[7] We agree that *TES Franchising, LLC*, is highly relevant to the present case, but reject the defendants' interpretation. In *TES Franchising, LLC*, the defendant claimed that, in granting a prejudgment remedy, the trial court had failed to consider his defenses sufficiently. Id., 134. Our Supreme Court clearly stated that this claim did not alter the standard of review: "The defendant thereby urges this court to decide the merits of these claims as a matter of law using plenary review in light of the trial court's allegedly inadequate consideration. The defendant misconstrues our proper role in reviewing a trial court's granting of a prejudgment remedy, however, because we do not conduct a plenary review of the merits of defenses and counterclaims raised, but rather our review is confined to a determination of whether the trial court's finding of probable cause constitutes clear error." Id., 140 n.8. The court further noted that "[a]n appellate court is entitled to presume that the trial court acted properly and considered all the evidence. . . . The [trial] court's role in such a hearing is to determine probable success by weighing probabilities. . . . [T]his weighing process applies to both legal and factual issues." (Internal quotation marks omitted.) Id., 142.

The court in *TES Franchising, LLC*, then determined that the trial court adequately had considered the defenses raised: "Our review of the trial court's memorandum of decision reveals that the court properly took into account the defendant's defenses and counterclaims because the court used the correct legal test, acknowledged all of the defenses and counterclaims and explicitly stated that it had considered them. Although the trial court did not discuss the merits of each claim, or articulate its reasoning for finding probable cause with regard to those claims, we presume that the trial court acted properly and considered all of the evidence before it. That presumption is further strength-

ened by the trial court's explicit statement that it had considered all of the defendant's defenses and counterclaims in its determination of probable cause." Id., 141–42.

The defendants emphasize that a key factor from *TES Franchising, LLC*, is absent from the present case. Specifically, the defendants point to the fact that the trial court in the present case did not acknowledge their defenses or explicitly state that it had considered them. The defendants minimize the fact that the court discussed the merits of each claim and articulated its reasoning for finding probable cause with regard to those claims. Furthermore, after reviewing the court's memorandum of decision, we conclude that the court specifically and sufficiently addressed the defendants' defenses. For example, the court discussed the nature of the contractual relationship between the parties and "whether Nyberg is personally liable as to these claims inasmuch as he failed to disclose that he was acting in a representative capacity of his principal, CSM." The court also specifically found that the plaintiffs had justifiably relied on the promise Nyberg made that advanced payments for labor would be used on the project. With respect to the defendants' argument that the plaintiffs never had made a demand for the return of their money in the conversion and statutory theft causes of action, the court specifically stated: "At some point, the plaintiffs came to realize that the monies paid to [the defendants] were not being used in a proper manner or for their intended purposes in accordance with the contract between the parties. . . . [In] an e-mail from Valencis written to Nyberg, wherein Valencis expresses concern over charges not accounted for, [Valencis] states that he expect[s] any unused funds to be immediately returned and appropriate credits issued to questionable charges." (Internal quotation marks omitted.) Finally, the court noted that the plaintiffs had "demonstrated probable cause as to the element of intent as well as to the other elements of statutory theft . . . ."

This analysis was, in fact, more comprehensive than that of the trial court in *TES Franchising, LLC*, which merely referred to, but did not analyze, the defendant's defenses and counterclaims in any significant detail; it merely set forth the legal standard to grant an application for a prejudgment remedy. See *TES Franchising, LLC* v. *Feldman*, Superior Court, judicial district of New Haven, Docket No. CV-05-4013191-S (February 2, 2006); see also *TES Franchising, LLC* v. *Feldman*, supra, 286 Conn. 142 ("the far better practice would have been for the trial court to set forth its reasoning with regard to the defenses and counterclaims raised in opposition to the issuance of a prejudgment remedy").

The trial court in the present case stated the legal standard for granting an application for a prejudgment remedy, for drawing an adverse inference against a civil

defendant asserting his privilege against self-incrimination, and for each of the defendants' defenses. Furthermore, unlike the trial court in *TES Franchising, LLC*, the court here expressly set forth its conclusions with references to the evidence, and made extensive findings of fact.[8] The express consideration of the defenses also strengthens the presumption that the court acted properly and took into account all of the evidence before it. See *TES Franchising, LLC* v. *Feldman*, supra, 286 Conn. 142.

We also are guided by our decision in *Kosiorek* v. *Smigelski*, 112 Conn. App. 315, 323–24, 962 A.2d 880, cert. denied, 291 Conn. 903, 967 A.2d 113 (2009), where the defendant argued that the trial court had failed to take his defenses and counterclaims into account when it granted an application for a prejudgment remedy. This court determined that, "[a]lthough the defendant argues that the court did not take into consideration his defenses or counterclaims, there is no evidence in the record to support such a contention. The court clearly articulated the proper standard in its memorandum of decision, including the necessity of taking into consideration the defenses and counterclaims of a defendant." Id. Similarly, in the present case there is no indication that the trial court failed to take into account the defendants' defenses. We thus conclude, on the basis of the memorandum of decision and the controlling case law, that the court gave sufficient consideration to the defenses raised by the defendants.

B

The defendants next claim that there was insufficient evidence to grant the application for a prejudgment remedy. In considering this issue, we will return to the defendants' defenses, but will consider them as arguments made by the defendants as to whether the plaintiffs met their burden of proof.

1

The defendants first assert that, with regard to the contract claims as applied to Nyberg, "there is insufficient evidence to establish that it was clearly [Nyberg's] intention to assume any personal contractual liability." The proper inquiry, however, is not whether Nyberg so intended, but, rather, whether Nyberg disclaimed personal liability by stating that he was acting as an agent. "It is clearly the law of this state that [i]t is the duty of the agent, if he would avoid personal liability on a contract entered into by him on behalf of his principal, to disclose not only the fact that he is acting in a representative capacity, but also the identity of his principal, as the person dealt with is not bound to inquire whether or not the agent is acting as such for another." (Internal quotation marks omitted.) *Klepp Wood Flooring Corp.* v. *Butterfield*, 176 Conn. 528, 532–33, 409 A.2d 1017 (1979).

Nyberg's statement that he was a " 'handshake kind of business person' " and Valencis' understanding that CSM and Nyberg were "one and the same" could form the basis for probable cause that Nyberg failed to disclose that he was an agent, as could the ambiguous reference in an unsigned contract to "David W. Nyberg of CSM North, LLC." Nyberg's statement that he was a " 'handshake kind of business person' " implies that he personally guaranteed his reliability. Valencis' belief that CSM and Nyberg were one and the same could indicate that he believed CSM was merely a trade name used by Nyberg, rather than a separate entity. There were no references to Nyberg "on behalf of" CSM, or "as an agent of" CSM. It thus was not clear error for the court to conclude that the plaintiffs had established probable cause for Nyberg's personal liability.

2

The defendants next assert, with regard to the promissory estoppel, fraud and negligent misrepresentation counts, that the plaintiffs failed to establish probable cause that the defendants induced the plaintiffs to act in reliance on their statements.[9] "[U]nder the doctrine of promissory estoppel, [a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance. Thus, a promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard, he had no reason to expect any reliance at all." (Emphasis omitted; internal quotation marks omitted.) *Torringford Farms Assn., Inc.* v. *Torrington*, 75 Conn. App. 570, 575, 816 A.2d 736, cert. denied, 263 Conn. 924, 823 A.2d 1217 (2003); see also *Sturm* v. *Harb Development, LLC*, 298 Conn. 124, 142, 143–44, 2 A.3d 859 (2010) (detrimental reliance element of fraud and negligent misrepresentation). "The trier of fact considers all relevant circumstances in determining whether reliance is reasonable. . . . The plaintiff's knowledge of the misrepresentation carries significant weight." (Citation omitted.) *National Groups, LLC* v. *Nardi*, 145 Conn. App. 189, 195, 75 A.3d 68 (2013).

There was sufficient evidence that the defendants made representations on which the plaintiffs relied. For example, Nyberg stated in an e-mail: "The way I can [bill] 35 [to] 40 percent less is because I pay my sub[contractors] weekly as well as all materials are ordered up front for savings. If this is not understood—everyone needs to. I had a budget on this job. Jerry please show me changes, etc. Typically the initial costs are significant. Jerry please put a weekly job meeting together

that is mandatory for our team including me." Nyberg represented that he would pay subcontractors weekly and order materials up front, and he defrayed concerns regarding escalating costs by stating that initial costs are significant. The trial court determined that the plaintiffs paid the defendants accordingly on the basis of these representations. In addition, the court properly drew an adverse inference based on Nyberg's invoking his fifth amendment privilege against self-incrimination and his refusal to answer questions regarding either his role in invoicing or whether he invoiced for materials that were never provided. The court's conclusion that the plaintiffs had demonstrated probable cause as to their reliance on the statements made by the defendants was not clearly erroneous.

3

The defendants next claim that the court lacked sufficient evidence to conclude, with regard to the conversion and statutory theft counts, that the plaintiffs had demonstrated probable cause that they made a demand for return of payments made to the defendants. See *Deming* v. *Nationwide Mutual Ins. Co.*, 279 Conn. 745, 770–71 905 A.2d 623 (2006) (conversion and statutory theft have identical factors, with addition of intent requirement for statutory theft); *Label Systems Corp.* v. *Aghamohammadi*, 270 Conn. 291, 331 n.30, 852 A.2d 703 (2004) (demand requirement where possession not initially wrongful); see also General Statutes § 52-564 (civil damages for theft); General Statutes § 53a-119 (larceny). The plaintiffs pleaded, and the court relied on, a statement by Valencis in an e-mail that he expected "any unused funds to be immediately returned and appropriate credits issued to questionable charges." This was in the context of an e-mail in which Valencis also stated that the bank believed that $200,000 of the $600,000 paid to CSM was unaccounted for and that the plaintiffs would not be releasing any additional payments to CSM.

The defendants assert that this demand was not sufficiently specific because it lacked a precise amount and did not ask for the immediate return of the money. The defendants fail to cite any case law regarding the specificity of a demand. In *Molski* v. *Bendza*, 116 Conn. 710, 164 A. 387 (1933), the court considered the specificity required by a demand for return. In *Molski*, as part of a contract for the sale of land, the parties had agreed that the plaintiff could remove cut wood from the defendant's newly acquired property. Id., 710. The defendant began preventing the plaintiff and others sent by the plaintiff from picking up the wood. Id., 710–11. The defendant claimed that the plaintiff's demand for the wood was insufficient because he had not demanded all of it. Id., 711. The court determined that efforts "made by the plaintiff to remove the wood, [combined] with the refusal of the defendant to let him enter upon

the premises, serve all the requirements of [the demand] rule." Id. In the present case, on the basis of *Molski*, we conclude that the demand requirement is flexible enough to encompass the trial court's finding that a demand occurred. In the factual situation presented, the e-mail put the defendants on notice that the plaintiffs had requested the immediate return of any unspent money and either the repayment of or other restitution for the misspent money. We therefore conclude that it was not clear error for the court to grant the prejudgment remedy with regard to the conversion and statutory theft counts.

4

The defendants' final claim of insufficient evidence is with regard to the statutory theft count. They contend that the court improperly concluded that the plaintiffs had demonstrated probable cause that the defendants intended to deprive the plaintiffs of their money. "Conversion can be distinguished from statutory theft as established by § 53a-119 in two ways. First, statutory theft requires intent to deprive another of his property; second, conversion requires the owner to be harmed by a defendant's conduct. Therefore, statutory theft requires a plaintiff to prove the additional element of intent over and above what he or she must demonstrate to prove conversion." (Internal quotation marks omitted.) *Deming* v. *Nationwide Mutual Ins. Co.*, supra, 279 Conn. 771.

Intent may be inferred from the conduct of the parties. See *Masse* v. *Perez*, 139 Conn. App. 794, 801, 58 A.3d 273 (2012), cert. denied, 308 Conn. 905, 61 A.3d 1098 (2013). "It is well established that the question of intent is purely a question of fact. . . . Intent may be, and usually is, inferred from the defendant's verbal or physical conduct. . . . Intent may also be inferred from the surrounding circumstances. . . . The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available. . . . Intent may be gleaned from circumstantial evidence such as . . . the events leading up to and immediately following the incident. . . . Furthermore, it is a permissible, albeit not a necessary or mandatory, inference that a defendant intended the natural consequences of his voluntary conduct." (Internal quotation marks omitted.) *State* v. *Saez*, 115 Conn. App. 295, 302–303, 972 A.2d 277, cert. denied, 293 Conn. 909, 978 A.2d 1113 (2009).

Here, Nyberg continued to assure the plaintiffs that their payments were necessary while also failing to pay the subcontractors and suppliers, which provided evidence of the defendants' intent. Further, the court found, on the basis of the evidence, that Nyberg knew that duplicate bills had been issued and that payment had been made for materials not received and services not rendered. After being confronted about this by

Valencis, the defendants nonetheless retained the funds. The court also emphasized Nyberg's invocation of his fifth amendment privilege regarding what happened to the checks from the plaintiffs, which Ginsberg said were placed on Nyberg's desk. See *Olin Corp.* v. *Castells*, 180 Conn. 49, 53–54, 428 A.2d 319 (1980) (adverse inference based on assertion of fifth amendment privilege component of probable cause for intent requirement in fraudulent conveyance action). We conclude, therefore, that this evidence was sufficient for the court to determine that the plaintiffs had demonstrated probable cause for the intent requirement of their statutory theft claim.[10]

II

The defendants' final claim is that the court improperly failed to make a specific finding of damages for each count for which it found probable cause. We are not persuaded.

The defendants provide scant legal support for their proposition. They cite to the following passage from *Kosiorek* v. *Smigelski*, supra, 112 Conn. App. 322–23: "[S]ection 52-278d (a) requires that a trial court make a probable cause determination as to both the validity of the plaintiff's claim and the amount of the remedy sought. See General Statutes § 52-278d (a); see also *Union Trust Co.* v. *Heggelund*, 219 Conn. 620, 625, 594 A.2d 464 (1991)." (Internal quotation marks omitted.) The court in *Kosiorek* also stated, however, that a trial court only need determine "the probable amount of the damages involved" and that "the likely amount of damages need not be determined with mathematical precision . . . the plaintiff bears the burden of presenting evidence [that] affords a reasonable basis for measuring her loss." *Kosiorek* v. *Smigelski*, supra, 323.

In *Union Trust Co.* v. *Heggelund*, supra, 219 Conn. 625, the court stated: "In undertaking the probable cause analysis that our present statute requires, a court is required to consider not only the validity of the plaintiff's claim but also the amount that is being sought. See *Solomon* v. *Aberman*, 196 Conn. 359, 379, 493 A.2d 193 (1985); *Essex Group, Inc.* v. *Ducci Electric Co.*, 181 Conn. 524, 525–26, 436 A.2d 16 (1980); *Ledgebrook Condominium Assn., Inc.* v. *Lusk Corporation*, [172 Conn. 577, 585, 376 A.2d 60 (1977)]." In *Solomon* v. *Aberman*, supra, 379, the court stated that, "[a]s a matter of general experience, a determination of a claim's probable validity normally will entail at least some consideration of the amount of damages which may be found upon a full trial." (Internal quotation marks omitted.) In *Essex Group, Inc.* v. *Ducci Electric Co.*, supra, 181 Conn. 525–26, our Supreme Court determined that the trial court had not calculated the amount of damages properly and, therefore, the court erred in granting the prejudgment remedy. None of these cases examined whether the court was required to analyze damages for

each count. In all of these cases, damages are described with reference to the plaintiff's total loss or the judgment following trial, rather than to each individual count. See *Solomon* v. *Aberman*, supra, 379 (noting trial courts should consider "amount of damages"); *Ledgebrook Condominium Assn., Inc.* v. *Lusk Corp.*, supra, 585 (prejudgment remedy applications concerning "unliquidated damages . . . should state facts sufficient to enable the court to determine the probable amount of the damages involved"). This aligns with the language of § 52-278d (a) (1), which provides in relevant part that the court shall determine "whether or not there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought. . . will be rendered in the matter in favor of the plaintiff . . . ." There is no indication that *Kosiorek* or its predecessors intended to expand on the statutory requirement.[11]

Furthermore, other cases involving prejudgment remedies have not divided the damages among the different claims. In *Kinsale, LLC* v. *Tombari*, 95 Conn. App. 472, 475 n.3, 478, 897 A.2d 646 (2006), this court affirmed the trial court's judgment granting a prejudgment remedy despite the lack of clarity regarding which claims led to the damages: "The basis of the $100,000 attachment is not totally clear. The court found probable cause as to three of the plaintiffs' claims: nuisance, malicious erection of a structure and libel. Because the evidence of damages presented at the hearing related to the diminished value of the plaintiffs' properties, we assume that the prejudgment remedy was based on the claims of nuisance or malicious erection of a structure or both. Although the defendants filed a motion for articulation of the court's decision, they did not seek an elucidation of the amount awarded for each of the claims for which the court found probable cause." Although other courts have discussed damages on a claim by claim basis, there is no indication that they were required to do so when, for example, damages may be duplicative. See *Centimark Corp.* v. *Village Manor Associates Ltd. Partership*, 113 Conn. App. 509, 526–27, 967 A.2d 550 (determining damages for breach of contract, then stating that damages applied to other counts as well), cert. denied, 292 Conn. 907, 973 A.2d 103 (2009); see also *Roberts* v. *TriPlanet Partners, LLC*, 950 F. Supp. 2d 418, 423 n.3 (D. Conn. 2013) (court granted prejudgment remedy but only considered certain claims because plaintiff did not offer evidence of additional damages based on remaining claims).[12]

In determining damages in the present case, the trial court separated those damages subject to statutory treble damages from those damages which were not. It carefully analyzed the evidence to determine the amounts of both categories of damages. The defendants never asked for an allocation of the damages as to

each count, nor have the defendants pointed to a legal requirement that the court do so. The various counts are alternative approaches to claim the appropriate amount of damages for the single series of events that led to a loss by the plaintiffs. For these reasons, we conclude that the court did not commit clear error by failing to make a specific finding of damages for each of the plaintiffs' counts. Accordingly, we conclude that the court did not commit clear error in granting the plaintiffs' application for a prejudgment remedy.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Gerald Ginsberg, JG Electric, LLC, and Level Design Group, LLC, also were named in the application for a prejudgment remedy as defendants. The plaintiffs stated at the hearing on the application that it was directed at only Nyberg and CSM, whom we refer to collectively as the defendants and individually, when necessary, by name.

[2] Pursuant to General Statutes § 52-278*l* (a) (1), an order granting a prejudgment remedy is considered a final judgment for purposes of appeal.

[3] The plaintiffs also alleged negligence, civil conspiracy, slander of title, and abuse of process. They withdrew the slander of title and abuse of process counts prior to the court's decision.

[4] The court also stated that Nyberg was the manager of Acton, LLC, which is the sole member of CSM.

[5] Nyberg's invocation of his fifth amendment privilege was based on a criminal complaint that was filed against him.

[6] General Statutes § 52-278d (a) provides: "The defendant shall have the right to appear and be heard at the hearing. The hearing shall be limited to a determination of (1) whether or not there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, *taking into account any defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff*, (2) whether payment of any judgment that may be rendered against the defendant is adequately secured by insurance, (3) whether the property sought to be subjected to the prejudgment remedy is exempt from execution, and (4) if the court finds that the application for the prejudgment remedy should be granted, whether the plaintiff should be required to post a bond to secure the defendant against damages that may result from the prejudgment remedy or whether the defendant should be allowed to substitute a bond for the prejudgment remedy. If the court, upon consideration of the facts before it *and taking into account any defenses, counterclaims or set-offs, claims of exemption and claims of adequate insurance*, finds that the plaintiff has shown probable cause that such a judgment will be rendered in the matter in the plaintiff's favor in the amount of the prejudgment remedy sought and finds that a prejudgment remedy securing the judgment should be granted, the prejudgment remedy applied for shall be granted as requested or as modified by the court. The court shall not grant the prejudgment remedy if the prejudgment remedy or application for such prejudgment remedy was dismissed or withdrawn pursuant to the provisions of section 52-278j." (Emphasis added.)

[7] In *TES Franchising, LLC* v. *Feldman*, supra, 286 Conn. 141, the court observed that a valid defense would defeat a finding of probable cause.

[8] We also note that the defendants failed to seek an articulation of the court's memorandum of decision. Under these facts and circumstances, however, it is not necessary to remand the case to the trial court for an articulation. See Practice Book § 60-5.

[9] The defendants also refer to this concept as causation. We will use the term "detrimental reliance," as that is the terminology used in the case law.

[10] The defendants also claim that the court's finding on the intent element is inconsistent with its findings that the defendants' initial possession of the plaintiffs' money was rightful and that the plaintiffs' actions did not merit a finding of reckless indifference to support the CUTPA claim. The defendants do not provide further support for this position. There is no apparent contradiction between the rightful possession of money initially, which relates to the plaintiffs' belief that they paid the defendants for a service, and the defendants' intent to deprive the plaintiffs of that money

by never providing the service. The conversion and statutory theft findings are, therefore, not inconsistent. In ruling on the CUTPA claim, the court stated that it declined "to award such damages given that Nyberg has invoked his fifth amendment privilege against self-incrimination," and cited to *Gargano* v. *Heyman*, 203 Conn. 616, 622, 525 A.2d 1343 (1987), which states that "[a]warding punitive damages and attorney's fees under CUTPA is discretionary . . . ." Rather than making a finding that the plaintiffs' actions did not merit a finding of reckless indifference, as the defendants argue on appeal, the court was exercising its discretion based on the situation in which Nyberg found himself given the outstanding criminal charges against him.

[11] The defendants appear to misapprehend the meaning of the phrase "cause of action" in *Kosiorek* v. *Smigelski*, supra, 112 Conn. App. 323, to mean that the trial court must determine separate damages for each claim or count. The terms cause of action and claim are not always synonymous. "It is important to recognize the distinction between a claim and a cause of action, terms that oftentimes are confused and even used interchangeably. For the purposes of the regulation of pleadings and procedure in civil actions, a plaintiff's cause of action constitutes a single group of facts which are claimed to have brought about an unlawful injury to the plaintiff for which one or more of the defendants are liable, *without regard to the character of the legal rights of the plaintiff which have been violated. . . .* In order for the facts to constitute a single group, the liability of each defendant must, in some aspect of the proof permissible under the allegations of the complaint, relate to and depend upon a single primary breach of duty. . . . Therefore, when a plaintiff asserts multiple claims, which are legal theories that arise out of and depend upon the group of facts that brought about a single primary breach of duty, there is but one cause of action. . . . Despite there being one cause of action, the plaintiff can maintain separate claims against individual defendants, who need not be jointly liable for each claim." (Citations omitted; emphasis in original; footnote omitted; internal quotation marks omitted.) *JP Morgan Chase Bank, N.A.* v. *Winthrop Properties, LLC*, 312 Conn. 662, 684–85, 94 A.3d 622 (2014). "A cause of action is that single group of facts that is claimed to have brought about an unlawful injury to the plaintiff and that entitles the plaintiff to relief. . . . Even though a single group of facts may give rise to rights to several different kinds of relief, it is still a single cause of action." (Citation omitted.) *McCue* v. *Birmingham*, 88 Conn. App. 630, 636, 870 A.2d 1126, cert. denied, 274 Conn. 905, 876 A.2d 14 (2005). We view the reference to cause of action in *Kosiorek*, therefore, as meaning the entire factual situation giving rise to the various legal claims advanced by the plaintiffs.

[12] Again, we note that the defendants did not ask the trial court for an articulation of its findings. "Although we find the court's ruling somewhat ambiguous, without the clear lens of an articulation, we cannot conclude that the court did not consider the defendants' arguments and setoff in setting the value of the attachment." (Footnote omitted.) *Morris* v. *Cee Dee, LLC*, 90 Conn. App. 403, 419, 877 A.2d 899, cert. granted, 275 Conn. 929, 883 A.2d 1245 (2005) (appeal withdrawn March 13, 2006).